**COPARR, LTD. and Victor A. Caranci, Plaintiffs,**

v.

**The CITY OF BOULDER, Defendant.**

**Civ. A. No. 87–M–1865.**

United States District Court, D. Colorado.

Oct. 3, 1989.

Eugene V. Megyesy and David E. Bellack, Saunders, Snyder, Ross & Dickson, P.C., Denver, Colo., for plaintiffs.

Joseph N. deRaismes and Sue Ellen Harrison, City Atty., City of Boulder, Boulder, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This civil action challenges Ordinance Numbers 5083 and 5129 enacted by the City of Boulder with respective effective dates of December 31, 1987, and August 5, 1988. The ordinances are now incorporated into the Boulder Revised Code. The plaintiffs are the Colorado Pesticide Applicators for Responsible Regulation ("Coparr"), a non-profit trade association of commercial pesticide applicators, and Victor Caranci, a manager of residential property in Boulder who contracts for the commercial application of pesticides and personally applies pesticides on that property, as needed. The plaintiffs seek 1) a declaratory judgment that the ordinances are void under the Supremacy Clause of the U.S. Constitution, Article VI, Clause 2 because such local regulations are pre-empted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.;* 2) an injunction against enforcement of the ordinances; 3) an injunction against the enactment of any ordinance regulating the sale and use of pesticides as covered by FIFRA; and 4) attorney's fees under 42 U.S.C. § 1988. Jurisdiction is alleged under 28 U.S.C. §§ 1331, 2201, and 2202. The legal questions have been presented by

cross motions for summary judgment. There are no genuine issues of material fact. Oral argument was heard on March 16, 1989.

In general, FIFRA requires that all pesticides be registered with the Environmental Protection Agency (EPA) prior to sale. The EPA Administrator may classify pesticides for general or restricted use; promulgate certification standards for applicators of restricted pesticides; impose packaging and labeling requirements upon pesticides; and prescribe regulations for making and maintaining records. Pursuant to Section 24 of FIFRA, 7 U.S.C. § 136v, Colorado has enacted the Colorado Pesticide Act, C.R.S. § 35–9–101 *et seq.* and the Colorado Pesticide Applicator's Act, C.R.S. § 35–10–101, *et seq.*

■ The defendant argues that this court lacks jurisdiction to grant the declaratory relief requested by plaintiffs, citing *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In *Franchise Tax,* a state agency sought a declaration that its tax levies were *not* pre-empted by ERISA. The case was removed to the federal court. The Court held that federal jurisdiction did not exist, even though the defendant could have filed a coercive action in federal court to enjoin application of the state regulation. The distinction was that the federal claim would arise only as a defense to an action brought under state law. This case is different, as the Court recognized in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 at n. 14, 103 S.Ct. 2890, 2899 at n. 14, 77 L.Ed.2d 490 (1983). Here, as in *Shaw,* the plaintiffs seek a declaratory judgment that local law is pre-empted under the Supremacy Clause. The federal question is the controlling element of the plaintiffs' claims. Accordingly, the dispute is within the subject matter jurisdiction granted in 28 U.S.C. § 1331.

■ The Boulder ordinances are currently in effect and require an immediate and significant change in the plaintiffs' conduct. The case is therefore ripe for determination even though no enforcement action is pending. *Abbott Laboratories v.*

*Gardner,* 387 U.S. 136, 153, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967) (authorizing pre-enforcement judicial review of food and drug regulations where they require "an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance").

The plaintiffs have presented affidavits showing that the Boulder ordinances will subject them to fines and imprisonment; will have a significant detrimental affect on their ability to conduct business; will interfere with applicators' ability to determine application dates on an ad hoc basis as permitted by prevailing weather conditions; and that the posting of notices will create an unfavorable impression on the public regarding pesticide application.

The defendant contends that "neither plaintiff has standing to challenge both ordinances and, therefore, each plaintiff's challenge must be limited to the ordinance in which each has a concrete stake in the outcome." Defendant's motion at 2. That assertion has no practical effect. Plaintiffs in the aggregate have standing to challenge both of the Boulder ordinances and there is an obvious connection between the requirements affecting property owners and those affecting commercial applicators.

The parties agree that *Louisiana Public Service Comm'n v. FCC,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) established the following criteria for determining federal pre-emption:

> The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and

execution of the full objectives of Congress. Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.

*Id.,* at 368–69, 106 S.Ct. at 1898–99 (citations omitted).

▮ The plaintiffs rely primarily upon section 24 of FIFRA, 7 U.S.C. § 136v, to support their position that Congress intended to pre-empt local regulation of pesticides by authorizing limited state regulation in these words:

(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

(c)(1) A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such use has not previously been denied, disapproved, or cancelled by the Administrator.

The argument is that this express grant of state authority without mention of local governments expresses an intent to exclude them from the field of pesticide control.

The submitted legislative history is not conclusive of Congressional intent. The House Agricultural Committee "rejected a proposal which would have permitted political subdivisions to further regulate pesticides on the grounds that the 50 States and the Federal Government should provide an adequate number of regulatory jurisdictions." H.R.Rep. No. 511 at 16. The Senate Committee on Agriculture and Forestry agreed with that position. S.Rep. No. 92–838, 92d Cong.2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 3993, 4008. The Senate Commerce Committee disa-

greed, and proposed an amendment specifically authorizing local governments to regulate the use of pesticides. S.Rep. No. 92–970, 92d Cong.2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4111.

The compromise bill passed by a Senate vote of 71–0 did not contain any provision explicitly authorizing local regulation. See 118 Cong.Rec. 32263. Senator Allen, chair of the subcommittee on Agricultural Research and General Legislation, inserted into the Congressional Record (with unanimous consent) an excerpt from the Senate Committee on Agriculture and Forestry Report, stating that FIFRA "should be understood as depriving such local authorities and political subdivisions of any and all jurisdiction and authority over pesticides and the regulation of pesticides." *Id.* at 32256. The joint explanatory statement of the Conference Committee did not address the subject of local regulation. Conference Report No. 92–1540, 92d Cong.2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4130.

Courts have come to different conclusions about this legislative history. In *Maryland Pest Control Ass'n v. Montgomery County,* 646 F.Supp. 109, 111 (D.Md.1986), *aff'd without opinion,* 822 F.2d 55 (4th Cir.1987), the court found that "the evidence is clear that Congress … concluded that only States and not their subdivisions should be authorized to regulate the sale and use of pesticides." In *People ex rel. Deukmejian v. Mendocino County,* 36 Cal.3d 476, 204 Cal.Rptr. 897, 907, 683 P.2d 1150, 1160 (1984), the court found that "[T]he legislative history [of section 24 of FIFRA] does not demonstrate a clear congressional intention to preempt traditional local police powers to regulate the use of pesticides or to preempt state power to distribute its regulatory authority between itself and its political subdivisions." The court read the legislative history as adopting a compromise position by which local regulation was neither authorized nor prohibited. The states were left free to determine whether their powers should be exercised directly, by political subdivisions, or both.

■ The California court's approach is consistent with the historical view of state sovereignty and the state's freedom to distribute regulatory power between itself and its political subdivisions. This court agrees with that analysis. In Colorado, the state constitution grants to the people of home rule cities "the full right of self-government in both local and municipal matters." *Colorado Constitution*, Art. XX, Section 6. Boulder is a home rule city with the powers granted by Article XX. To the extent that pesticide regulation can appropriately be characterized as a "local matter," Boulder has the same authority as the state. There is no doubt that the use of pesticides within a city is a matter affecting the health and welfare of the people in it. Accordingly, the subject is a matter for local concern and is within the legislative power of a home rule city.

■ In addressing the broad question of whether FIFRA has "occupied the field" of pesticide regulation, there is a presumption that "local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). Boulder maintains that its ordinances address the where, when, and how of pesticide application in the city, issues outside the scope of FIFRA. That claim is too broad. It is also in conflict with those provisions of Ordinance No. 5083 that provide for *local enforcement* of FIFRA, the Pesticide Act, the Pesticide Applicator's Act and regulations promulgated thereunder by incorporating them. The result is that the violation of any of their provisions constitutes a violation of the Boulder ordinance and exposes the violator to the sanctions of the Boulder Revised Code. It is obvious that enforcement is an integral part of any regulatory system. To permit Boulder to engraft the national and state laws into its regulatory scheme would undermine the conclusion that there are legitimate areas of local concern not addressed by the Congress and state legislature. While mutual exclusivity is not required, there would be an inversion of the pyramid of power if municipal law enforce-

ment agencies interpreted and applied state and federal law.

■ Because the Colorado Pesticide Act and Pesticide Applicators' Act were enacted in recognition of and are complementary to FIFRA, the pre-emption doctrine is applied as if those state statutes are a part of the federal law. It is not possible to sever provisions of Ordinance No. 5083. Taken as a whole, that ordinance is invalid because it is in conflict with FIFRA. The Boulder City Council carefully avoided such a conflict when it adopted Ordinance No. 5129. It imposes notification requirements prior to the airborne application of pesticides on users and the contracting parties, not commercial applicators. Post-application notification is required for applications to lakes. The plaintiffs have failed to show any conflict between the separate notification requirements of that ordinance and the federal-state regulatory system. The assertion that compliance may be difficult because of weather conditions is insufficient to establish a barrier or conflict with federal and state law.

The plaintiffs are entitled to a judgment declaring Ordinance No. 5083 null and void and to an injunction prohibiting the enforcement of its provisions. The plaintiffs' attack on Ordinance No. 5129 is rejected. That ordinance is valid and enforceable. The plaintiffs' request for an injunction from enacting *any* ordinance regulating the sale and use of pesticides as set forth in FIFRA is rejected because of this court's conclusion that there is an area of legitimate local regulatory power. Because this litigation has produced mixed results and the plaintiffs' broad claim of pre-emption has been denied, no attorneys' fees will be awarded.

Upon the foregoing, it is

ORDERED that judgment will enter declaring that those provisions of the Boulder Revised Code that were enacted by Ordinance No. 5083 are void and invalid; that the City of Boulder is enjoined from enforcing them against the plaintiffs; that those provisions of the Boulder Revised Code that were enacted by Ordinance No. 5129

are valid and may be enforced and that no attorneys' fees or costs will be awarded to any party.