**Gordon ROBARDS**

v.

**COTTON MILL ASSOCIATES.**

Supreme Judicial Court of Maine.

Argued Dec. 4, 1995.
Decided June 7, 1996.

---

Eric M. Mehnert (orally), Hawkes & Mehnert, Augusta, for Plaintiff.

Neil S. Shankman (orally), Shankman & Associates, Lewiston, for Defendant.

Before WATHEN, C.J. and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

█ Cotton Mill Associates appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) ordering Cotton Mill to cease and desist from using any application that impermissibly inquires into the nature of a person's disability or handicap and awarding Gordon Robards civil penal damages and attorney fees. The court (*Crowley, J.*) had previously granted a partial summary judgment in favor of Robards on the basis that Cotton Mill made illegal inquiries into the nature and extent of his disability and denied Cotton Mill's motion for a summary judgment on its claim that section 4582 of the Maine Human Rights Act, 5 M.R.S.A. § 4582 (Pamph.1995), is preempted by 24 C.F.R. 100.202(c) (1995), a regulation implementing the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. §§ 3601–3631 (1994). Because we conclude that 5 M.R.S.A. § 4582 is preempted by federal law to the extent it conflicts, we vacate the judgment.

In November 1990 Robards, who has a psychiatric disability saw an advertisement for housing at Cotton Mill Apartments, a federally subsidized housing project for the disabled and the elderly. He went to the apartments to apply for housing and received an application packet that included a "State-ment of Health Form"[1] that requested a physician's statement describing Robards's disability and his ability to live independently. This form was given to all non-elderly applicants to assess their eligibility for tenancy. On February 11, 1991, Robards submitted an application for tenancy without the "Statement of Health Form."

On April 2, 1991, Robards met with Gene Lowe, Cotton Mill's property manager, and requested that he accept an alternative health form that required a physician's statement that Robards was legally disabled but did not specify the nature or severity of his disability. Lowe refused the alternative health form and informed Robards that it was no longer necessary for him to submit any health form. Cotton Mill never offered Robards housing.

Robards filed a complaint with the Maine Human Rights Commission alleging that Cotton Mill had made illegal inquiries concerning the nature and extent of his disability. On December 14, 1992, the Commission found that there were reasonable grounds to believe that unlawful discrimination had occurred. Conciliation efforts to resolve Robards's complaint were unsuccessful.

On February 5, 1993, Robards filed a complaint in the Superior Court alleging a violation of 5 M.R.S.A. § 4582,[2] the Fair Housing section of the Maine Human Rights Act that prohibits any inquiry concerning a disability of a prospective tenant. Cotton Mill filed a motion for a summary judgment seeking a legal determination that section 4582 is preempted by 24 CFR § 100.202,[3] a federal

1. The Statement of Health Form provides in pertinent part:
STATEMENT OF HEALTH INCLUDING ANY DISABILITIES. (statement of your doctor should be used here.) Physician should state here a brief description of your medical condition, disability and/or handicap and whether you are able to care for yourself if living alone and/or able to care for [an] apartment.

2. 5 M.R.S.A. § 4582 (Pamph.1995) states in pertinent part:
It is unlawful housing discrimination, in violation of this Act:
For any owner, lessee, sublessee, managing agent or other person having the right to sell, rent, lease or manage a housing accommodation, or any agent of these to make or cause to be made any written or oral inquiry concern-

ing the ... physical or mental disability ... of any prospective purchaser, occupant or tenant of the housing accommodation....

3. 24 C.F.R. § 100.202(c) (1995) states in pertinent part:
(c) It shall be unlawful to make an inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling after it is so sold, rented or made available, or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person. However, this paragraph does not prohibit the following inquiries, provided these inquiries are made of all applicants, whether or not they have handicaps:
(1) Inquiry into an applicant's ability to meet the requirements of ownership or tenancy;

regulation implementing the FHAA by authorizing an inquiry to determine whether an applicant is able to meet the requirements of tenancy and qualified for a dwelling or priority available only to handicapped persons. Robards also filed a motion for a partial summary judgment. The court denied Cotton Mill's motion, concluding that federal law does not preempt Maine law and that even if it did Cotton Mill's inquiry may have exceeded the limited scope permissible under federal law. The court granted Robards's motion, finding that Cotton Mill made illegal inquiries into the nature and extent of Robards's disability in violation of the Maine Human Rights Act.

A jury-waived trial was held on the issue of damages. At the close of Robards's case Cotton Mill moved for the first time to dismiss the complaint for failure to commence the action within the statute of limitations. The court properly considered this issue waived. A judgment was entered ordering Cotton Mill to cease and desist from using any application that impermissibly inquires into the nature of a person's disability or handicap and awarded Robards civil penal damages and attorney fees.

█ A summary judgment is proper if the pleadings, affidavits, or any other discovery material establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law. M.R.Civ.P. 56(c). In reviewing a grant of a summary judgment we view the evidence in the light most favorable to the party against whom the judgment has been granted, and review the trial court decision for errors of law. *Kakitis v. Perry,* 659 A.2d 852, 853 (Me.1995).

█ The Supremacy Clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "[S]tate law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (citation

omitted); *see City Cab Co. v. Edwards,* 745 F.Supp. 757, 760 (D.Me.1990) (state law that conflicts with federal law is invalid). We have acknowledged that " '[i]t is through operation of the supremacy clause of the United States Constitution that federal law preempts conflicting state law.' " *Central Maine Power Co. v. Town of Lebanon,* 571 A.2d 1189, 1191 (Me.1990) (citation omitted). The doctrine of preemption applies whether the federal law is contained in a statute or a regulation. *King v. E.I. du Pont de Nemours & Co.,* 806 F.Supp. 1030, 1034 (D.Me. 1992), *aff'd,* 996 F.2d 1346 (1st Cir.1993), *cert. dismissed,* 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993) (citation omitted); *see Maine Yankee Atomic Power Co. v. Maine Pub. Util. Comm'n,* 581 A.2d 799, 803 (Me. 1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991) (federal agency acting within its authority may preempt state regulation).

█ "The exercise of federal supremacy should not be presumed lightly." *Maine Yankee Atomic Power Co.,* 581 A.2d at 803 (citation omitted). As the court in the instant case noted,

> [p]reemption ... is not a favored concept, and federal regulation will be deemed to be preemptive of state regulatory powers only if grounded in "persuasive reasons—either the nature of the regulated subject matter permits no other conclusion or that Congress has unmistakably 'so ordained.' "

*Central Maine Power Co.,* 571 A.2d at 1192 (citations omitted).

█ The court's sole task in determining whether federal law preempts a state statute is to ascertain Congressional intent. *California Fed. Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987); *see Maine Yankee Atomic Power Co.,* 581 A.2d at 803 (courts must determine the objective of Congress before concluding whether a state statute hinders achievement of federal policy).

---

(2) Inquiry to determine whether an applicant is qualified for a dwelling available only to persons with handicaps or to persons with a particular type of handicap;

(3) Inquiry to determine whether an applicant for a dwelling is qualified for a priority available to persons with handicaps or to persons with a particular type of handicap....

There are several ways in which federal law may preempt state law.

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is an outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Central Maine Power Co.*, 571 A.2d at 1191 (quoting *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986)); *see Freightliner Corp. v. Myrick*, —— U.S. ——, ——, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995) (preemption may be express or by implication, where statute's scope indicates Congress intended federal law to occupy a field exclusively or where state law is in actual conflict with federal law).

■ Robards contends that federal and state law are not in conflict because the intent of Congress concerning the effect of the FHAA on state laws is limited by 42 U.S.C. § 3615 (1994) that states:

> Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.

While both the federal and state law protect the disabled person's right not to be discriminated against in the housing market, federal law also specifically authorizes a limited amount of federally subsidized housing for the disabled and a limited inquiry to assess a person's eligibility therefor. Section 3615 of the FHAA does not authorize a state statute (however well intended) that would undermine this federal benefit for the disabled.

■ When a state statute is not within either the first or second clause of section 3615, we must make an independent determination as to whether there is a conflict between the federal and the state law. *United States v. Wisconsin*, 395 F.Supp. 732, 734 (W.D.Wis.1975). This determination requires us to consider whether 5 M.R.S.A. § 4582 "stands as 'an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Conflict preemption occurs when compliance with both state and federal requirements is impossible. Title 24 CFR § 100.202(c) allows an inquiry to determine whether an applicant meets the requirements of tenancy and is in fact disabled. Section 4582 prohibits any inquiry concerning a physical or mental disability of a prospective tenant. Compliance with both is impossible because an inquiry that is permissible under the federal regulation would constitute a violation of the state statute. Title 24 CFR § 100.202(c) preempts 5 M.R.S.A. § 4582 to the extent that the limited inquiry set forth in the federal regulation must be permitted under state law. To the extent that the inquiry exceeded that authorized by the federal regulation, however, there could be a violation of state law.

It is unclear whether the court determined that Cotton Mill exceeded the scope of the inquiry permitted by federal law. To the extent that it may be relevant, the United States Department of Housing and Urban Development found that there was no reasonable cause to believe that a federal discriminatory housing practice had occurred.[4]

---

4. HUD based its determination on the following evidence. Robards alleged that Cotton Mill discriminated against him because of his handicap. Specifically he claimed that he was given a health status form that inappropriately asked

questions regarding the severity of his handicap and that Cotton Mill failed to properly process his housing application. HUD found that although Cotton Mill gave Robards a health status form that inquired as to his handicap the investi-

The entry is:

Judgment vacated. Remanded for further proceeding consistent with the opinion herein.

All concurring.

gation revealed that all nonelderly applicants were given this form to assess their housing eligibility and that Robards was not requested to submit the health status form when he submitted his application. HUD further found that Robards's application for housing was duly processed by Cotton Mill.