1998 ME 157

**Gordon ROBARDS**

v.

**COTTON MILL ASSOCIATES.**

Supreme Judicial Court of Maine.

Argued April 7, 1998.
Decided June 18, 1998.

Eric M. Mehnert (orally), Jones, Bernstein & Mehnert, LLP, Augusta, for plaintiff.

David J. Van Baars (orally), Shankman & Associates, Brunswick, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

ROBERTS, Justice.

[¶ 1] Cotton Mill Associates appeals from the judgment entered in the Superior Court (Kennebec County, *Atwood, J.*) in favor of Gordon Robards. On appeal Cotton Mill contends that the court erred by finding that a clause in its housing application violated 5 M.R.S.A. § 4582 (Pamph.1997) and granting Robards a summary judgment. Cotton Mill also asserts that the court's award of attorney fees and civil penal damages to Robards was erroneous. We affirm the judgment.

I.

[¶ 2] In April 1991 Robards filed a complaint with the Maine Human Rights Commission alleging that Cotton Mill, a federally subsidized housing project, engaged in illegal and impermissible inquiries regarding his handicap status. His allegations [1] arose from Cotton Mill's use of a health status form in its application procedure that contained the following provision:

> STATEMENT OF HEALTH INCLUDING ANY DISABILITIES (statement of your doctor should be used here). Physician should state here a brief description of your medical condition, disability and/or handicap and whether you are able to care for yourself if living alone and/or able to care for [an] apartment.

[¶ 3] On December 14, 1992, the Commission determined that reasonable grounds existed to believe that this inquiry violated 5 M.R.S.A. § 4582. The Commission attempted to resolve the dispute between the parties but ultimately failed to enter into a conciliation agreement with Cotton Mill within 90 days after its finding. On February 5, 1993, Robards filed a complaint against Cotton Mill in the Superior Court seeking damages for emotional distress and lost income, civil penal damages, attorney fees, and costs. In May 1993 Cotton Mill filed a motion for a summary judgment, claiming that 5 M.R.S.A. § 4582 was preempted by a federal regulation, 24 C.F.R. § 100.202(c) (1997),[2] promulgated under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3631 (1994). In response, Robards filed a motion for a summary judgment. The court (*Crowley, J.*) granted Robards's motion and ordered a trial on damages.

[¶ 4] After the hearing, the court (*Alexander, J.*) ordered that Cotton Mill cease and desist from using any application that illegally inquired into the nature and severity of a person's disability and awarded Robards a civil penalty of $1,000 and $5,000 in attorney fees. Cotton Mill appealed the court's order granting Robards a summary judgment and its order awarding damages. In *Robards v. Cotton Mill Assocs.*, 677 A.2d 540 (Me.1996) (*Robards I* ), we vacated the Superior Court's decision, holding that 24 C.F.R. § 100.202(c) preempted 5 M.R.S.A. § 4582, and remanded the matter to the trial court for a determination whether the inquiry in the health status form exceeded the scope permitted by federal law. *Id.* at 544.

[¶ 5] On remand, both Cotton Mill and Robards filed a second motion for a summary judgment. The court (*Atwood, J.*) granted a summary judgment in Robards's favor, reinstated the original damage award, and ordered Cotton Mill to pay an additional $5,371.69 in attorney fees. This appeal followed.

---

1. This is the second time this matter has been before us on appeal. For a more comprehensive recitation of Robards's interactions with Cotton Mill, see *Robards v. Cotton Mill Assocs.*, 677 A.2d 540, 542 (Me.1996) (*Robards I* ).

2. 24 C.F.R. § 100.202(c) (1997) provides:

> (c) It shall be unlawful to make an inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling after it is sold, rented or made available, or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person. However, this paragraph does not prohibit the following inquiries, provided these inquiries are made of all applicants, whether or not they have handicaps:
>
> (1) Inquiry into an applicant's ability to meet the requirements of ownership or tenancy;
>
> (2) Inquiry to determine whether an applicant is qualified for a dwelling available only to persons with handicaps or to persons with a particular type of handicap; . . . .

## II.

[¶ 6] Although Cotton Mill contends that Robards failed to prove that its application procedure violated 5 M.R.S.A. § 4582, our inquiry is limited to a determination whether the health status form required by that procedure exceeds the scope permitted by section 100.202(c). The determination that the use of the form in the application procedure violated section 4582 was not challenged by Cotton Mill in its first appeal. The issue therefore is not preserved for appellate review. *See McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 51 n. 3 (Me.1996).

[¶ 7] The provision in question consists of two separate inquiries. The first requires a physician to describe the applicant's medical condition; the second inquires into the applicant's ability to care for himself and to care for an apartment. Neither party challenges the court's determination that the second inquiry is permissible pursuant to section 100.202(c)(1). Rather, the parties disagree whether the first inquiry is permissible pursuant to section 100.202(c)(2), which allows a landlord to make a limited inquiry to determine whether an applicant is qualified for housing available only to persons with handicaps. The purpose of that section is to facilitate a landlord's determination whether an applicant is eligible for housing. A permissible inquiry is therefore one limited to discerning whether an applicant has a handicap. Understandably, a landlord is allowed to request that a physician verify an applicant's handicap. A landlord is not, however, permitted to require the applicant to provide the landlord with a description of his handicap. By requesting a description of Robards's disability, Cotton Mill exceeded the scope of the permissible inquiry allowed by section 100.202(c)(2).

**3.** 5 M.R.S.A. § 4622 (1989), as it existed in 1991, provided:

No attorneys' fees under section 4614 and no civil penal damages under section 4613 may be awarded to a plaintiff in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission and the commission either:

. . . .

## III.

[¶ 8] Cotton Mill next contends that the court erred by awarding Robards attorney fees and civil penal damages because the Commission failed to engage in objectively reasonable efforts to reach a conciliation agreement. Assuming *arguendo* that this standard was applicable, the Commission engaged in objectively reasonable efforts to conciliate this matter. The compliance officer sent several letters and made several telephone calls to the attorneys representing both parties in an attempt to resolve the matter, but did not circulate a draft proposal because the statute of limitation for Robards to commence a civil action was about to expire. In light of the impending deadline and the refusal of both parties to settle the dispute, the compliance officer's actions were reasonable. *See Baumgardner v. Secretary, U.S. Dep't of Housing & Urban Dev.*, 960 F.2d 572, 579 (6th Cir.1992).

[¶ 9] Cotton Mill also asserts that Robards failed to comply with 5 M.R.S.A. § 4622 (1989)[3] by commencing this action before waiting 90 days after the Commission's finding that there existed reasonable grounds to believe that unlawful discrimination had occurred. Cotton Mill contends that since the Commission made its findings on December 14, 1992, Robards should have waited 90 days after that date, March 14, 1993, before commencing this litigation. Contrary to its assertions, section 4622 does not require a plaintiff to wait 90 days after the Commission's finding of reasonable grounds before commencing a civil action. In construing a statute, we examine the plain meaning of the statutory language, seeking to give effect to the legislative intent, *Daniels v. Tew Mac Aero Servs., Inc.*, 675 A.2d 984, 987 (Me.1996), and avoiding absurd, illogical, or inconsistent results, *Estate of*

B. Failed, within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement to which the plaintiff was a party.

Section 4622 has since been amended to allow a plaintiff, who has received a right-to-sue letter from the Commission, to pursue attorney fees and civil penal damages in a civil action. 5 M.R.S.A. § 4622 (Pamph.1997).

*Whittier*, 681 A.2d 1, 2 (Me.1996). The plain language of section 4622 provides that a plaintiff may bring an action as long as the Commission failed, *within* 90 days after its finding that reasonable grounds existed to believe that unlawful discrimination occurred, to enter into a conciliation agreement. The statutory language does not prohibit a plaintiff from commencing an action before the 90–day period has expired if the Commission, as it did in this case, determines within the 90–day period that conciliation efforts have failed.

[¶ 10] Cotton Mill's assertion that Robards was not a "prevailing party" within the meaning of 5 M.R.S.A. § 4614 (1989) is also unavailing. The Maine Human Rights Act provides that a court in its discretion may allow the prevailing party reasonable attorney fees. *Id.* A determination of prevailing party status is a question of fact, subject to a review for clear error. *Hicks v. City of Westbrook*, 649 A.2d 328, 329 (Me. 1994). Contrary to Cotton Mill's contentions, the court's award of civil penal damages and a cease and desist order qualified Robards as a "prevailing party" because Robards received "actual relief on the merits of his claim [that] materially alter[ed] the legal relationship between the parties by modifying [Cotton Mill's] behavior in a way that directly benefit[ed][him]." *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

[¶ 11] Finally, the court properly considered the factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), in its determination of a reasonable award of attorney fees. Moreover, once the court found that unlawful discrimination had occurred, it could validly impose a civil penalty pursuant to 5 M.R.S.A. § 4613(2)(B)(7) (1989 & Pamph.1997). *Maine Human Rights Comm'n v. City of Auburn*, 425 A.2d 990, 995 (Me.1981).

The entry is:

Judgment affirmed.

DANA, Justice, with whom CLIFFORD and SAUFLEY, Justices, join, dissenting.

[¶ 12] I respectfully dissent. In my opinion, the plain language of 24 C.F.R. § 100.202(c)(2) does not support the Court's conclusion that the regulation allows a landlord to inquire *whether* an applicant has a handicap, but does not permit a landlord to ask for a brief description of the handicap. Because I believe the request for information by Cotton Mill does not run afoul of the type of inquiry expressly permitted pursuant to 24 C.F.R. § 100.202(c)(2), I would vacate the judgment.

[¶ 13] Section 100.202(c)(2) permits a landlord to make otherwise unlawful inquiries regarding a person's handicap "to determine whether an applicant is qualified for a dwelling available only to persons with handicaps...." The regulation clearly contemplates that a landlord who provides federally subsidized housing for handicapped persons will need to make a *determination* whether an applicant is in fact handicapped as defined by the Federal Fair Housing Act. The Act provides in pertinent part:

"Handicap" means, with respect to a person—

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) a record of having such impairment, or

(3) being regarded as having such an impairment....

42 U.S.C. § 3602(h) (1994). The Court's restrictive reading of section 100.202(c)(2) effectively allows the determination of whether an applicant is qualified for housing to be made by a physician of the applicant's choosing, rather than by the owner of the housing, as anticipated by the regulation.

[¶ 14] The appropriate inquiry, as contemplated by the regulations and as requested by Cotton Mill, does no more than require an individual seeking to take advantage of federally subsidized housing to make more than a conclusory showing that he qualifies for such assistance. Cotton Mill did not require an applicant to provide an extended medical history or copies of medical records

to substantiate a request for housing. It merely asked for a "brief description" of the applicant's handicap to enable it to make the necessary determination of whether the applicant's impairment "substantially limits one or more of such person's life activities." Because I believe a fair reading of section 100.202(c)(2) makes such a limited inquiry permissible, and because such an inquiry does not unreasonably intrude on an applicant's right to privacy, I would vacate the judgment of the Superior Court.