[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON AWARD OF PREJUDGMENT INTEREST AND ATTORNEY'S FEES
 ISSUES
The issues to be decided are the method of calculation of prejudgment interest and the amount of attorney's fees both based on Maine statutes in this complex insurance claim tried to a jury.
 PROCEDURAL FACTS
The plaintiff filed this lawsuit seeking $20,000,000 damages for loss and destruction of the plaintiff's business and $729,672 damage for loss of fish covered by an inventory insurance policy issued by the defendant, Lloyd's of London. A jury verdict was accepted and recorded on November 6, 2001. The jury answered interrogatories. The jury rejected the loss of business claim but rendered a $445,000 verdict in favor of the plaintiff for loss of the insured inventory. The jury found that the defendant, Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91, had violated Maine Revised Statutes 24A M.R.S.A. § 2436. The parties stipulated that the amount of any prejudgment interest and attorney's fees under § 2436 would be determined by the trial court.
The parties waived the presenting of evidence and submitted these matters to the court on briefs, the trial record and affidavits.
 FACTS
The court makes the following finding of facts:
The plaintiff, Mariculture Products LTD, Inc., owned and operated a fish farm at three locations in the State of Maine. The inventory of fish were insured by a policy issued by the defendant, Lloyd's of London. Plaintiff sustained a substantial loss of fish as a result of Hurricane Bob on August 19, 1991. For a variety of reasons the defendant refused to pay the insurance claim. The plaintiff filed a March 2, 1992 insurance claim for $744,070. Exhibit 50. The plaintiff claimed that as a result of the defendant's failure to pay the $744,070 insurance claim, it was forced out of business and sustained a consequential loss of the total value its business. It sought $20,000,000 damages for the consequential loss of the business in addition to the policy loss of $744,070 for the destroyed fish. The plaintiff later reduced its claim by: (1) eliminating cage damage in the amount of $10,450 and (2) reducing the lost fish claim CT Page 7138 by 658 fish in the amount of $3,948. This reduced the plaintiffs inventory insurance claim to $729,672. Exhibit 58. The defendant denied the plaintiffs claim on April 2, 1992 stating: we "reject your claim on the basis that the amount claimed is excessive." Exhibit 76.
Although the insurance policy language stated that it was controlled by the laws of the United Kingdom, this lawsuit was filed in Connecticut, where the plaintiff had its corporate headquarters and where its sole stockholder resided. The plaintiff alleged violations of various Maine statutes and these issues were submitted to the jury. The parties agreed that Maine law was to be applied as to the issues involving the calculation and determination of prejudgment interest as well as attorney's fees. The interrogatories submitted to the jury were based on Maine law. Counsel agreed that the trial court, not the jury, would decide the amount and calculation of interest and attorneys fees. There was no reference in that counsel's agreement that Connecticut law was applicable.
After a trial, the jury returned a verdict on November 6, 2001. The verdict was supported by answers to interrogatories. One of the jury interrogatory findings was that the defendant violated Maine Revised Statutes 24A M.R.S.A. § 2436. The statute states as follows:
 3. If an insurer fails to pay an undisputed claim or any undisputed part of any claim when due, the amount of the overdue claim or part of the claim bears interest at the rate of 1 1/2% per month after the due date.
 4. A reasonable attorney's fees for advising and representing a claimant on an overdue claim or action for an overdue claim must be paid by the insurer if overdue benefits are recovered in an action against the insurer or if overdue benefits are paid after receipt of notice of the attorney's representation.
The parties stipulated, that if such a violation was found by the jury, an award of prejudgment interest and attorney's fees would be appropriate. The parties further stipulated that the claim for prejudgment interest and attorney's fees under § 2436 including the method of calculation and the amount would be determined by the trial court. The court finds that the insurance claim as modified was filed by the plaintiff on March 2, 1992 and that this claim was filed pursuant to the policy terms. The claim was for inventory damage, the loss of fish caused by Hurricane Bob. The loss of fish is a covered occurrence under the CT Page 7139 policy. The claim was denied by the defendant on April 2, 1992. The court finds that interest must be calculated from April 2, 1992, through and including the verdict of November 6, 2001.
 CLAIMS OF THE PARTIES
There are six distinct issues raised by the parties for the trial court's consideration.
1. The plaintiff claims that 1 1/2% statutory interest on the damage award of $445,000 should be compounded monthly effective April 2, 1992.
The plaintiff cites two Maine trial court cases for that proposition. The defendant claims; (a) § 2436 does not permit compound interest, (b) the two cited court cases do not overrule the clear language of the Maine statutory scheme and (c) while some Maine statutes permit compound interest, § 2436 does not so provide.
2. The court must calculate the amount of compound interest at 1 1/2% per month compounded monthly on the $445,000 jury verdict from April 2, 1992 to November 6, 2001.
At oral argument the court was able to obtain an agreement by the parties that interest compounded monthly at the rate of 1 1/2% per month on the $445,000 verdict from April 2, 1992 through and including November 2, 2001 would be $2,020,783.09. That sum is interest only. To that sum must be added the $445,000 verdict and attorney's fees. The parties did not agree as to the interest compounded for an additional four days from November 2, 2001 to November 6, 2001.
3. The court must calculate the amount of simple interest of 1 1/2% per month on the $445,000 jury verdict from April 2, 1992 to November 6, 2001.
1 1/2% simple interest per month on the $445,000 verdict is $6,675 per month. From April 2, 1992 until November 2, 2001, 115 months elapse. Interest on the $445,000 from April 2, 1992 to November 2, 2001 is $767,625 in addition to the principal of $445,000. Four days additional interest from November 2, 2002 to November 6, 2001 is $890. The total verdict and interest is $1,213,515. To that sum must be added attorney's fees.
4. The court must determine the fees for the three attorneys who represented the plaintiff at trial; two from Connecticut and one pro hoc vice counsel from Portland, Maine. CT Page 7140
Affidavits from the three attorneys were submitted. The affidavits claim attorney's fees at an hourly rate plus out of pocket disbursements. The requested attorney fees are $559,440 and disbursements are claimed in the amount of $39,589 for a total award of attorney fees and disbursements of $599,029. The defendant objects to these fees and disbursements.
5. The plaintiff claims attorney fees on an alternate basis; a contingent fee.
"Mariculture asserts that an award of attorney's fees based on a standard 1/3 contingency is appropriate if that standard contingency rate generates fees greater than an hourly calculation." Plaintiff's Memorandum of Law, November 26, 2001, page 15. The court notes that no calculation of this contingency fee was presented.
6. The defendant claims that the attorney's fees claimed by the plaintiff were excessive:
A. The hourly rate for each of the attorneys was excessive.
 B. The plaintiff did not succeed on its largest claim, the $20,000,000 claim for loss of business.
 C. The plaintiff was only partially successful in its fish inventory insurance claim, receiving a jury verdict of $445,000 against a claim of $729,672 submitted to the jury.
 D. There was duplication of effort by the respective attorneys and therefore the attorneys fees should be reduced accordingly.
E. § 2436 does not permit an award of disbursements.
 CONCLUSION
The court will consider each of the above six issues in sections 1-6 in the CONCLUSION portion of this decision and render its legal conclusions.
1. § 2436 does not permit compound interest. Simple interest must be calculated.
The plain language of § 2436 states: "bears interest at the rate of CT Page 7141 1 1/2% per month after the due date." Defendant argues in its memorandum that § 2436 does not mention compound interest. Plaintiff argues that two Maine trial courts have concluded that compound interest is statutorily authorized. County Forest Products, Inc. v. Sphere DrakeUnderwriting, LTD., et al, Superior Court of Aroostook, DN: CV-95-269, December 15, 2000 and January 19, 2001 is cited by the plaintiff. InCounty Forest the trial court appears to have compounded interest at the rate of 1 1/2% per month. The actual calculations were not contained in the decision and this court cannot determine if the trial court in CountyForest compounded daily, monthly, annually or for any other period. There were two written trial court decisions. On the first page of the December 15, 2000 decision, the trial court justified its finding of compound interest by stating: "After review of Maine Mutual Fire Insurance Co. v.Watson, 532 A.2d 686, (Me. 1987) and the fact that the legislature was contemplating a mechanism to compel a fair result to an unfair practice under 24A M.R.S.A § 2436, the Court concludes that the statute means what it says: that interest is to be calculated at the rate of one and a half percent (1 1/2%) per month on damages. The statute appears punative and compulsatory, and thus directs compound interest until all due sums are paid in full." The only authority for the trial court's conclusion inCounty Forest in its December 15, 2000 decision was Maine Mutual and § 2436.
The second County Forest decision is dated January 19, 2001 and it contains the actual calculation of compound interest. The original judgment was $1,115,644.14 on the insurance claim and consequential damages. The compound interest for 44 months nearly doubled that amount by adding $1,032,342.36 of compounded 1 1/2% per month interest as per § 2436. No further rationale for the use of compound as opposed to simple interest is contained in the January 19, 2001 decision. Therefore, this court concludes that neither County Forest decision is persuasive.
Maine Mutual Fire Insurance Company v. Watson, 532 A.2d 686 (Me. 1987) was decided October 22, 1987. The plaintiff filed a lawsuit seeking adjudication of the rights of the parties under a homeowner's policy and the trial court found the insurer liable to the insured homeowners. The court found that the insured was entitled to interest on the late payment of the claim as well as attorney's fees, both authorized by § 2436. The Supreme Judicial Court of Maine stated as follows: "The trial court found that `it is undisputed that the $26,000 was due Watson by January 13, 1984.' The court compounded the one and one-half percent per month interest rate from mid-January 1984 until February 15, 1985, the date the Plaintiff issued an unrestricted check for $24,000 to the Defendant." Id. 690. This is the only reference to compounding in the appellate decision and it is dicta. Neither decision contains a calculation of the CT Page 7142 interest so no independent determination can be made as to the actual fact of compounding. Since Maine Mutual was dicta on compounding this court considers the case to be a trial court decision only. Furthermore, there is no authority stated for the trial judge's compounding. The issue of compounding was not litigated in Maine Mutual either in the trial court or on appeal. For those reasons, this court cannot find MaineMutual authoritative.
Therefore, the only basis for County Forest and Maine Mutual is the plain language of the statute. § 2436 does not mention compounding. In construing a statute in Maine one looks first to the plain meaning of the statutory language to give effect to legislative intent. If the meaning of the statute is clear on its face, then there is no need to look beyond the words themselves. Villas By The Sea Owners Association v. Garrity,774 A.2d 1115, 1116 (Me. 2001); Stage Neck Owners Association v.Poboisk, 726 A.2d 1261, 1263 (Me. 1999); Cook v. Lisbon SchoolCommittee, 682 A.2d 672, 676 (Me. 1996).
Numerous Maine statutes award interest upon the failure to promptly pay. Some award interest on damages at the rate of 1 1/2% per month. 24A M.R.S.A. § 2217, Individual Remedies, ("damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month"); 35A M.R.S.A. § 759, Enforcement ("Interest accrues on the penalties at a rate of 1 1/2% per month");
There are a series of Maine statutes that by specific language provide for compounding of interest. 20A M.R.S.A. § 12004, Repayment of pre-June 1981 students; (Section 4. "only for the amount granted under the loan plus interest at the rate of 6% each year compounded semiannually") and (Section 3. "plus interest on each payment at the rate of 6% each year compounded semiannually"); 24A M.R.S.A. § 2113, Report and tax of independently procured coverages. (Section 4 "The tax imposed hereunder, if delinquent shall bear interest at the rate of 6% per annum, compounded annually"); 24A M.R.S.A. § 2512, Reinstatement ("the payment of all premiums in arrears with interest at a rate not exceeding 6% per annum compounded annually"); 24A M.R.S.A. § 2524, Standard provisions-reversionary annuities ("with interest as to both payments and indebtedness at a rate to be specified in the contract but not exceeding 6% per annum compounded annually"); 24A M.R.S.A. § 4119, The contract ("and draw interest not to exceed 5% per annum compounded annually"); 24A M.R.S.A. § 4379, Priorities in distribution of assets. (Section 7 "Interest at the legal rate compounded annually on all claims"); 36 M.R.S.A. § 186, "Interest ("interest on the tax, calculated from that date and compounded monthly.")
There is a major difference between straight interest a/k/a simple CT Page 7143 interest and compound interest. Compound interest is defined as interest on interest. The result of compounding interest over a long term is staggering. For example; if there was a principal indebtedness of $100,000 that was due at the rate of 12% per year and interest on that was compounded annually: At the end of six years, $200,000 including the principal would be owed; At the end of 12 years, $400,000; At the end of 18 years, $800,000; At the end of 24 years, $1,600,000 would be owed. If, on the other hand, that same $100,000 bore 12% simple interest, at the end of the first year $112,000 including the principal would be owed; At the end of six years, $172,000; At the end of 24 years, $388,000 would be owed. The effect of 12% annual compound interest on $100,000 versus 12% annual simple interest on $100,000 over a 24 year period of time is to increase the total amount due by over four times; $1,600,000 (compound) vs. $388,000 (simple). It is this type of progression that the plaintiff is seeking since the interest runs from April 2, 1992 for almost ten years.
Most Maine statutes refer to a specific rate of interest. Maine case law discussing these interest statutes speak of the penal nature of the interest at the rate of 1 1/2% per month, a sum higher than the normal statutory rate for debts in Maine. The interest called for by § 2436 does not require compounding in order to satisfy the penal nature of the statute. Maine's legislature knew how to compound interest and did require compound interest in a number of statutes. By failing to include compounding language, by the plain reading of the statute, this court finds that § 2436 requires simple interest, not compound interest.International Paper Company v. Town of Jay, 665 A.2d 998, 1002 (Me. 1995); Pelletier v. Fort Kent Golf Club, 662 A.2d 220, 223 (Me. 1995). ("If the meaning of the statute is clear, then we need not look beyond the words of the statute.")
2. 1 1/2% per month compounded interest compounded monthly on the $445,000 verdict from April 2, 1992 through and including November 2, 2001 is $2,020,783 interest only. Using a 360 day year, four days compounded interest from November 2, 2001 to November 6, 2002 is $4,932. Therefore, the total compounded interest from April 2, 1992 through and including November 6, 2001 is $2,025,715 interest only.
3. The trial court has calculated 1 1/2% per month simple interest on the $445,000 verdict from April 2, 1992 through and including November 6, 2001. It is $768,515 interest only.
4. The court must determine attorney fees using Maine law.
§ 2436 states: "A reasonable attorney's fees for advising and representing a claimant on an overdue claim. . . ." "Generally, attorney CT Page 7144 fees may only be awarded where there is. . . . explicit statutory authorization." Mancini v. Scott, 744 A.2d 1057, 1061 (Me. 2000). The leading case on the subject of the attorney's fees is Georgia Highway and it has been adopted by both Maine and Connecticut. Johnson v. GeorgiaHighway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); Poussardv. Commercial Credit Plan, Incorporated of Lewiston, 479 A.2d 881, 884
(Me. 1984).
Maine has identified a number of factors that may be considered in determining reasonable attorney's fees once the court decides to make an award. "Those factors are; (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id. 884. In deciding whether to award attorney's fees and in deciding what amount will be awarded, the trial court has discretion to consider all factors that reasonably bear on the fairness and justice of the award. Rosen v. Rosen, 651 A.2d 335, 336 (Me. 1994);Saucier v. Allstate Insurance Co., 742 A.2d 482, 492 (Me. 1999).
The plaintiff is claiming attorney's fees on a time basis without disbursements in the amount of $559,440 through November 6, 2001. Two attorneys from the Connecticut law firm of Cummings Lockwood were present each day during the trial. The affidavits in support of those fees total $367,431. Counsel from the law firm of Norman, Hanson and DeTroy, LLC of Portland, Maine was admitted pro hoc vice. He participated every day in the trial. He submitted an affidavit of attorney's fees in the amount of $192,019. The attorney fees claimed is $559,440. In addition the plaintiff seeks an award of $39,589 for disbursements.
5. The court rejects the claim for a contingency fee. The plaintiff and Norman, Hanson and DeTroy, LLC did sign a retainer agreement that called for an additional attorney fees at a 5% contingency rate. The 5% contingency amount is claimed to be calculated on the total amount of the judgment including prejudgment interest. In addition, that same retainer agreement refers to an hourly rate. There is no contingency fee agreement for Connecticut counsel. There is no reference to a 1/3 contingency in any signed retainer agreement. No calculation of attorney fees under the 5% contingency were presented. One of the three plaintiffs attorney charging a contingency fee while others are paid hourly makes no sense. No authority for such a result has been offered. The plaintiff claimed a CT Page 7145 1/3 contingency attorney fees in its November 26, 2001 Memorandum. It should be noted that the verdict is $445,000 and the simple interest on that verdict is $768,515. This totals $1,213,515. One-third of that sum is $404,505. This figure of $404,505 is less the attorney fees awarded to the plaintiff by this decision. This court rejects an award of attorney fees based on a contingency and will instead apply the Georgia Highway
standards.
6. The defendant has filed five objections to the amount of the attorney fees claimed by the plaintiff under § 2436. The court will address each as numbered on pages 5-6 of this decision.
A. The court finds that the hourly rate charged by two of the three plaintiffs attorneys to be reasonable.
John W. Cannaviano is a highly experienced trial lawyer with 24 years experience and a partner in a major Connecticut firm. He is a commercial litigation specialist. The $375 per hour rate is appropriate for his experience and has been supported by affidavits of three respected attorneys. The defendant received the benefit of Mr. Cannaviano's lower rate $225 an hour for the time spent prior to July 2001.
James D. Poliquin is a partner in a Portland Maine law firm. He is highly experienced in trying insurance claims. He has been a trial lawyer for 20 years and is the past Chair of the Insurance Practice Section of the Maine Bar Association. His rate of $150 per hour is more than fair as are the hourly rates for other representatives of his firm billing at the respective rates of $140, $110 and $80 per hour. These rates are supported by an affidavit.
Robert J. Sickinger, an associate in Cummings Lockwood, is being billed at a rate of $230 per hour. He has practiced for six years. His practice has been devoted to litigation. The court finds that his hourly rate should be reduced to that which he was originally billing in February 2001, $195 an hour. Ham v. Greene, Superior Court, judicial district of New Haven at New Haven, docket number 322775 (June 12, 2000,Levin, J.), 27 CLR 512, 2000 Ct. Sup. 7183.
B. The defendant is claiming that the major issue in this case was $20,000,000 for the loss of plaintiff's business. The jury rejected that claim and awarded $445,000 as lost fish inventory damages on the insurance claim. Thus the defendant argues that the plaintiff was not successful in prosecuting the case. It points to the fact that the plaintiff requested $20,729,672 from the jury and was awarded $445,000, slightly over 2% the claim submitted to the jury. The court finds that the defendant never made any offer to pay the $729,672 fish loss. CT Page 7146 Virtually the entire trial was devoted to fish loss claim and how it was investigated and adjusted by the defendant. The plaintiff was successful in the prosecution of this insurance claim. That claim that was the heart of the dispute. Saucier v. Allstate Insurance Company, supra, 742 A.2d 492.
C. The plaintiff was successful in its essential claim. The court notes that the plaintiff produced no business evaluation expert. The only testimony as to the value of the business was from the plaintiff's sole stockholder. That testimony took a short amount of time out of this lengthy trial. The essence of the plaintiffs claim was the loss of fish. Almost all of the efforts of the six lawyers were directed to that issue. Although the plaintiff received $445,000 on a fish loss claim of $729,672, the plaintiff was over 60% successful. The plaintiff won the case and there should be no reduction for "partial success." The plaintiff "was clearly the prevailing party." Mancini v. Scott, supra, 744 A.2d 1061; Hicks v. City of Westbrook, 649 A.2d 328-329 (Me. 1994). The plaintiff obtained the "actual relief on the merits of his claim [that] materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Robards v. Cotton Mill Associates, 713 A.2d 952, 955 (Me. 1998); Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed. 20 494, 503 (1992).
D. The defendant argues that there was duplication of effort made by the three attorneys and the total amount of hours should be reduced. The defendant argues that the duplication of effort can be gleaned from a careful reading of the attorneys' time records and bills attached to their affidavits. The defendant made no suggestion as to the proper amount of attorney fees without any duplication of effort.
The defendant further states that it was not necessary to prosecute this claim with three attorneys; two from Connecticut and one from Maine. It should be noted that the defendant was represented by three attorneys, who were always present in court and took active participation in the case; two from Massachusetts admitted pro hoc vice and one from Connecticut. All six attorneys actively participated in the trial. All three of the plaintiffs attorneys interrogated witnesses.
The plaintiff further notes that the nature of the claims were complicated, dealing with issues of conflicts of law and arcane issues of insurance interpretation utilizing law from outside the jurisdictions of Maine and Connecticut. The jury charge conference took place on the record and consumed four full trial days. That time was necessary to examine the legal issues presented to the jury for their resolution. In addition there were multiple motions that were filed requiring independent research by the court. These motions were filed virtually CT Page 7147 every day during the lengthy trial. The court will not reduce attorney fees for duplication of effort.
E. The court agrees that § 2436 does not permit an award of disbursements.
The plaintiffs affidavits requesting attorney fees discloses disbursements. The plaintiff's November 26, 2001 Memorandum admits the disbursements are $39,589 and they are in addition to the $559,440 attorney fees based on time records. Those disbursements are not permitted by the strict reading of the § 2436, which permits only attorney's fees. A companion statute does provide "costs and disbursements, reasonable attorney's fees." 24A M.R.S.A. § 2436-A. § 2436 has been held to be punitive and thus must be strictly construed. Burne v. John Hancock Mutual Life Insurance Co., 403 A.2d 775,777 (Me. 1979).
The court finds that the jury interrogatories finding that the defendant violated § 2436 is binding on this court. The award of prejudgment interest and attorney's fees is mandatory once the jury has made this finding. This court will apply the full panoply of factors inGeorgia Highway giving the greatest weight to the "time and labor required" measured by the hourly rate. Mancini v. Scott, supra,744 A.2d 1062. The court further finds that the hourly rate set by the court in this decision for each of plaintiff's attorneys is fair and reasonable taking into account the substantial expertise in insurance and commercial litigation possessed by the two lead plaintiff's attorneys.
The court has analyzed the time that has been expended and will disallow; (1) Costs and disbursements in the amount of $39,589 on the basis that disbursements and costs are not permitted by § 2436, (2) Mr. Sickinger's hourly rate of $230 per hour (It will be reduced to $195 per hour) and (3) All time records for members of Cummings and Lockwood other than Mr. Cannavino and Mr. Sickinger since they or not supported by an affidavit.
 THE COURT'S CALCULATION
The court has examined the following documents in order to calculate attorney's fees; (1) Attorney John W. Cannavino dated November 26, 2001; (2) Attorney Robert J. Sickinger dated November 26, 2001; (3) Attorney James D. Poliquin dated November 6, 2001; (4) A letter of Robert J. Sickinger, Esq., dated January 15, 2002. To each of these four documents were attached time records, disbursement sheets and bills for attorney fees. CT Page 7148
The court finds that the jury verdict is $445,000.
The court finds that the plaintiff should not be awarded any disbursements set forth in the attorney fee documents under 24A M.R.S.A. § 2436.
The court finds that the plaintiff should be awarded attorney fees of $487,194 based on the four above mentioned documents and so awards as follows: (1) Cannavino $210,428; (2) Sickinger $84,747; and (3) Poliquin $192,019.
The court awards simple interest of 1 1/2% per month on the $445,000 verdict from April 2, 1992 to November 6, 2001 in the amount of $768,515.
The court therefore, awards judgment to the plaintiff in the amount of $1,700,709, which is the total of the above three figures; (a) $445,000, (b) $487,194 and (c) $768,515. This judgment is as of November 6, 2001, the date the verdict was accepted and recorded.
The plaintiff is awarded costs pursuant to Connecticut statutes.
BY THE COURT
TIERNEY, J.