MARYLAND PEST CONTROL ASSOCIATION and Maryland Alliance for the Responsible Regulation of Pesticides, Plaintiffs,

v.

MONTGOMERY COUNTY, MARYLAND and Charles W. Gilchrist and Prince George's County, Maryland and Parris N. Glendening, Defendants.

Civ. A. No. JFM–86–1688.

United States District Court, D. Maryland.

Sept. 29, 1986.

---

Bruce C. Bereano, Steven Resnick, Annapolis, Md., for plaintiffs.

John McKenna, Parris Glendening, Upper Marlboro, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

In this action for declaratory and injunctive relief plaintiffs, commercial pesticide applicators, contend that ordinances enacted by Prince George's and Montgomery Counties imposing posting and notice requirements in connection with the application of pesticides are preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. Section 136 et seq. This Court previously granted plaintiff's request for preliminary injunctive relief. The parties have now cross-moved for summary judgment. Plaintiffs' motion will be granted and defendants' motions denied.

As amended in 1972, FIFRA comprehensively regulates both the interstate and the intrastate sale and use of pesticides. The effect of the 1972 "amendments ... [was] to change FIFRA from a labelling law into a comprehensive regulatory statute that will henceforth more carefully control the manufacture, distribution, and use of pesticides." H.R.Rep. No. 511, 92d Cong., 1st Sess. at 1 (1971). *See National Agricultural Chemicals Association v. Lomanger,* 500 F.Supp. 465, 468 (E.D.Cal. 1980). Prior to the amendments States and local subdivisions had exercised their regulatory powers over pesticides. The 1972 amendments define the extent to which they may continue to do so. Thus, 7 U.S.C. Section 136v provides in pertinent part:

(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit

any sale or use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

(c)(1) A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such use has not previously been denied, disapproved, or canceled by the Administrator. Such registration shall be deemed registration under Section 136a of this title for all purposes of this subchapter, but shall authorize distribution and use only within such State.

The primary question presented in this case is whether the term "State" as used in Section 136v includes a State's political subdivisions. If it does, Prince George's and Montgomery Counties are authorized by Section 136v to enact the ordinances here in question. If it does not, they are prohibited from doing so.[1]

FIFRA defines "State" without expressly including political subdivisions. 7 U.S.C. Section 136(aa) provides that "the term 'State' means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the Trust Territory of the Pacific Islands and American Samoa." Nevertheless, citing *People of California Ex Rel Deukmejian v. County of Mendocino*, 36 Cal.3d 476, 204 Cal.Rptr. 897, 683 P.2d 1150 (1984), defendants argue that absent clear evidence to the contrary, Congress should not be presumed to have excluded political subdivisions from the statutory definition.[2] To do so, defendants argue, would be to assume that Congress intended to invade a State's sovereign prerogative to divide as it sees fit its regulatory powers among its various levels of government.

The fallacy in defendants' argument is that the evidence is clear that Congress focused upon the very question here presented and concluded that only States and not their subdivisions should be authorized to regulate the sale and use of pesticides. This is evident from the face of the statute itself. FIFRA contains several provisions that do refer expressly to political subdivisions as distinct from States. *See* 7 U.S.C. Section 136f(b) (officers and employees of EPA "or of any State or political subdivision" are entitled to inspect records); 7 U.S.C. Section 136r(b) (EPA to develop monitoring plan "in cooperation with other Federal, State or local agencies"); 7 U.S.C. Section 136t(b) (EPA to cooperate with "any appropriate agency of any State or any political subdivision thereof"). Thus, as noted by Maryland's Attorney General, "when Congress intended that local governments play a role in FIFRA's regulatory scheme, it specifically said so." 70 Opinions of the Attorney General, No. 85–025, at 7–8.

Furthermore, the legislative history could not be more clear. In February 1971 the President submitted a legislative recommendation which became the basis for the 1972 amendments. The Administration's proposal was introduced in the House as H.R. 4152 on February 10, 1971. Section 19(c)c of the proposed bill provided that "nothing in this Act shall be construed as limiting the authority of a State or a political subdivision thereof to regulate the

---

1. Plaintiffs also argue that the notices required by the challenged ordinances constitute "labels" and that, even assuming that political subdivisions are encompassed within the term "State," the notices are therefore barred by Section 136v(b). This Court need not reach that question in light of its holding that local governments do not come within the term State as used in Section 136v. The Court notes, however, that it has substantial question about the meritoriousness of plaintiffs' argument on this point.

2. Judge Kaus filed a dissenting opinion in *Mendocino* accurately analyzing (in this Court's view) the language and legislative history of FIFRA. The Attorney General of Maryland reached the same conclusion as Judge Kaus. 70 Opinions of the Attorney General, No. 85–025 (October 28, 1985).

sale or use of a pesticide within its jurisdiction insofar as such regulation does not permit such sale or use as is prohibited under authority of this Act." The House Agricultural Committee held seventeen public hearings on H.R. 4152 and similar bills and on September 25, 1971 reported a new bill, H.B. 10729, out of Committee. That bill deleted any reference to political subdivisions in the section authorizing States to regulate the sale or use of pesticides. This was not by happenstance. The Committee report expressly stated that "the Committee rejected a proposal which would have permitted political subdivisions to further regulate pesticides on the grounds that the 50 States and the Federal Government should provide an adequate number of regulatory jurisdictions." H.R. Rep. No. 511, *supra*, at 16.

The bill was then referred to the Senate Committee on Agriculture and Forestry. On June 7, 1972, that Committee issued its report, in which it specifically "considered the decision of the House Agricultural Committee to deprive political subdivisions of States and other local authorities of any authority or jurisdiction over pesticides ... " The Senate Committee concurred with that decision and concluded that:

Clearly, the fifty States and the Federal Government provide sufficient jurisdictions to properly regulate pesticides. Moreover, few, if any, local authorities whether towns, counties, villages, or municipalities have the financial wherewithall to provide necessary expert regulation comparable with that provided by the State and Federal Governments. On this basis and on the basis that permitting each such regulation would be an extreme burden on interstate commerce, it is the intent that Section 24, by not providing any authority to political subdivisions and other local authorities of or in the States, should be understood as depriving such local authorities and political subdivisions of any and all jurisdiction and authority over pesticides and the regulation of pesticides. S.Rep. No. 92–838, 92d Cong.2d. Sess., *reprinted in*

1972 U.S. Code Cong. & Ad. News 3993, 4008.

The bill was then referred to the Senate Commerce Committee. When that Committee reported the bill, it contained a proposed amendment authorizing local governments to regulate the use of pesticides:

The amendment gives local government the authority to regulate the sale or use of a pesticide beyond the requirements imposed by State and Federal authorities.

While the Agricultural Committee bill does not specifically prohibit local governments from regulating pesticides, the report of that Committee states explicitly that local governments cannot regulate pesticides in any manner. Many local governments now regulate pesticides to meet their own specific needs which they are often better able to perceive than are State and Federal regulators. The amendment of the Committee on Commerce is intended to continue the authority of such local governments and allow them to protect their environment to a greater degree than would EPA. S.Rep. No. 92–970 92d Cong., 2d Sess., *reprinted in* 1972 & U.S. Code Cong. & Ad. News 4111.

Subsequently, in a summary of comments concerning the Commerce Committee's proposed amendments, the position of the Senate Committee on Agriculture and Forestry as to this particular proposed amendment was stated as follows:

Authority of local governments to regulate the use of pesticides amendment would permit local governments in addition to the Federal and State Governments to regulate the sale or use of a pesticide. The Committee on Agriculture and Forestry felt that regulation by the Federal Government and the 50 States should be sufficient and should preempt the field. 1972 U.S. Code Cong. & Ad. News at 4026. *See also* 1972 U.S.Code Cong. & Ad.News at 4066.

Thereafter, the Agriculture and Forestry Committee and the Commerce Committee met and conferred for nearly two months.

They drafted a compromise substitute bill which did not contain the provision authorizing local regulation of pesticides. A majority of the Commerce and all the members of the Agriculture and Forestry Committee agreed to this compromise.

On September 26, 1972, the full Senate proceeded to consider H.R. 10729. The amendments proposed by the Senate Committee on Commerce were offered, including the insertion of the phrase "or local government" in the section of the bill authorizing State regulation. *118 Cong.Rec.* 32251 (1972). Senator Talmidge, Chair of the Committee on Agriculture and Forestry, and Senator Allen, Chair of the subcommittee on Agricultural Research and General Legislation, offered as a substitute bill the compromise measure of the two committees. *Id.* at 32251–53 and 32260. With the unanimous consent of the Senate, Senator Allen inserted in the Congressional Record an excerpt from Senate Report No. 92–838, which included the statement that FIFRA "should be understood as depriving such local authorities and political subdivisions of any and all jurisdiction and authority over pesticides and the regulation of pesticides." *Id* at 32256. Immediately thereafter, Senator Allen published for the record, the "explanation of compromise substitute for the test of H.R. 10729," *Id* at 32257–58. That explanation made clear that the proposed amendment to grant local governments authority to regulate pesticides had not been included in the compromise bill. *Id* at 32258. The Senate passed the compromise version of H.R. 10729 by a vote of 71–0. *Id* at 32263.

Subsequently, pursuant to a Senate Resolution, members of the Senate and House met in conference to resolve the differences between the Senate and House versions of the legislation. Since both House and Senate versions had been expressly understood to deprive local governmental units of any power to regulate pesticides, the question of local regulation was not mentioned in the joint explanatory statement of the Committee on Conference, Conference Report No. 92–1540, 1972 U.S.Code Cong. & Ad.News 3993, or in the Agriculture and Forestry Committee Statement on "Differences between the Senate Amendment to H.R. 10729 and the Conference Substitute Therefore." *Id* at 33921–22. The Senate agreed to the Conference Report without a recorded vote on October 5, 1972. *Id,* 33924. The House considered and passed the Conference Report on October 12, 1972, by a vote of 198–99. *Id* at 35543–46.

As previously indicated, this legislative history could not be more clear. Both the House and the Senate expressly considered the question of whether local governments should be authorized to regulate pesticides and, although there was an interim disagreement between two Senate committees on the issue, the legislation as finally enacted by the Senate and the House did not include the proposed language, clearly focused upon in both chambers, which would have authorized local pesticide regulation. Principled decision-making and respect for the integrity of the legislative process compel the conclusion that Congress knew and meant what it was doing.

■ Defendants make a final contention that even assuming that local governments are not authorized under FIFRA to regulate the sale and use of pesticides, the ordinances in question here do not constitute such regulation. They argue that the ordinances are simply consumer information legislation. A rose (or as the plaintiffs see the legislation, a thorn) by any other name is still a rose, and the ordinances, however characterized by defendants, clearly constitute regulation. They require commercial applicators of federally regulated pesticides to post property to which pesticides are applied and to disseminate information to their customers regarding the application of the pesticides. If these requirements are not met, the applicators are subject to fine. Clearly the ordinances are intended to control conduct concerning the use of federally registered pesticides and constitute "regulation" which may be imposed under FIFRA only by legislation enacted by the Maryland General Assembly.

A separate order effecting the rulings made in this memorandum is being entered herewith.