**CENTRAL MAINE POWER COMPANY**

v.

**TOWN OF LEBANON.**

Supreme Judicial Court of Maine.

Argued Feb. 1, 1990.

Decided March 6, 1990.

---

**1190**

William H. Laubenstein, III (orally), Central Maine Power Co., Augusta, for plaintiff.

Thomas Harnett, Asst. Atty. Gen., Augusta, amicus curiae, for State of Maine.

Janet McGowan, Montpelier, Vt., amicus curiae, for Conservation Law Foundation of New England.

Karen Tilberg, Maine Audubon Soc., Falmouth, amicus curiae, for Maine Audubon Soc.

Alan E. Shepard (orally), Shepard & Read, Kennebunkport, for defendants.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

COLLINS, Justice.

Central Maine Power Company ("CMP") appeals from a summary judgment granted by the Superior Court (Kennebec County, *Alexander, J.*) in favor of three selectmen and the Town of Lebanon (hereinafter collectively "Lebanon"). CMP had brought a declaratory judgment action against Lebanon seeking, *inter alia,* a declaration that a Lebanon ordinance prohibiting non-agricultural use of pesticides without prior town approval was (1) invalid as an improper delegation of power and (2) preempted by the Federal Insecticide, Fungicide and Rodenticide Act of 1975 ("FIFRA")[1] and by both the Maine Pesticide Control Act ("Pesticide Control Act")[2] and the Maine Board of Pesticides Control Act ("Pesticide Board Act").[3] We affirm the summary judgment order.

**I.**

The facts are largely undisputed. CMP owns in fee a corridor of land in the Town of Lebanon on which high voltage transmission lines are located. To prevent interference with the transmission lines and to allow access to the lines for maintenance and repair, CMP must control the growth of vegetation along the corridor. CMP controls vegetation growth by cutting and through the application of chemical herbicides. CMP's utility lines lie in close proximity to residences, farmland, wells, roads, and one elementary school, as well as environmentally sensitive areas such as ponds, streams, wetlands, and aquifers.

On March 12, 1983, to protect the health and welfare of its citizens, Lebanon enacted the ordinance in dispute. This ordinance prohibits any commercial spraying of herbicides for non-agricultural uses unless this

---

1. 7 U.S.C. § 136 *et seq.* (1975).

2. 7 M.R.S.A. § 601 *et seq.* (1979).

3. 22 M.R.S.A. § 1471–A *et seq.* (1980).

spraying is first approved by a Town Meeting vote. In 1986, CMP requested approval for spraying herbicides along its transmission line corridor in Lebanon. On August 26, 1986, pursuant to the ordinance, the following Town Meeting article was presented for a vote:

> Should the Town of Lebanon, Maine, allow Central Maine Power to use herbicides to control brush growth along their power and/or transmission lines located in the Town of Lebanon, Maine.

The Town Meeting voted "no" on this article.

The next day CMP filed a declaratory action in Kennebec County Superior Court to determine the validity of the ordinance. CMP alleged that the ordinance is preempted by both state and federal laws regulating herbicides, that the ordinance is an improper delegation of powers, that the ordinance violates CMP's constitutional rights to due process and equal protection of the law, and that the ordinance amounts to unconstitutional special legislation.

On June 19, 1988, CMP moved for summary judgment on all counts. The Superior Court granted partial summary judgment against CMP on the issues of preemption and improper delegation. The court first determined that neither federal nor state law preempts the Lebanon ordinance. The court then denied CMP's claim of improper delegation because there was no delegation here; rather, the court found that "the town legislative body has reserved to itself authority to decide exceptions to its prohibition on non-agricultural commercial spraying." The court denied the summary judgment motion as to the remaining issues of due process, equal protection, and special legislation, finding that factual questions remained with respect to these issues.

The parties subsequently agreed to a settlement of the case, and on June 19, 1989, pursuant to M.R.Civ.P. 41(a)(1), both parties signed a stipulation of dismissal without prejudice of the remaining equal protection, due process, and special legislation claims. CMP then asked the Superior Court to enter final judgment, pursuant to M.R.Civ.P. 54(b), on the claims of improper delegation of authority and state and federal preemption that were the subject matter of the summary judgment order. The Superior Court (Kennebec County, *Alexander, J.*) ordered entry of final judgment on these issues.

## II.

■ CMP first argues that the Lebanon ordinance is invalid because FIFRA preempts local regulation of herbicide use. We find this argument unpersuasive.

The Supremacy Clause of the United States Constitution provides that the law of the United States "shall be the supreme Law of the Land...." U.S. Const. art. VI, cl. 2. We have recognized that "[i]t is through operation of the supremacy clause of the United States Constitution that federal law preempts conflicting state law." *Director of Bureau of Labor Standards v. Fort Halifax Packing Company,* 510 A.2d 1054, 1057 (Me.1986) (hereinafter *"Fort Halifax Packing "*).

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is an outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Public Service Commission v. F.C.C.,* 476 U.S. 355, 368–369, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted).

Nevertheless, the United States Supreme Court has determined that the "exercise of federal supremacy is not lightly to be presumed." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402, 416 (1981). In *Fort Halifax Packing,* we stated:

Preemption, however, is not a favored concept, and federal regulation will be deemed to be preemptive of state regulatory powers only if grounded in "persuasive reasons—either the nature of the regulated subject matter permits no other conclusion or that Congress has unmistakably 'so ordained.'"

*Id.* at 1057–58 (quoting *Alessi,* 451 U.S. at 522, 101 S.Ct. at 1905 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963))).

FIFRA comprehensively regulates both the interstate and the intrastate sale and use of pesticides. However, Congress did not intend the federal statute to preclude state regulation of the use of pesticides when such regulation is more stringent than the minimum federal standards established by the federal act. Specifically, 7 U.S.C. § 136v(a) provides:

A State may regulate the sale *or use of* any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this chapter.

In fact, the only language that FIFRA does contain precluding state regulation of pesticides concerns the area of labeling and packaging of pesticide products. *See* 7 U.S.C. § 136v(b). Clearly, the Lebanon ordinance involves the use of pesticides, not the packaging or labeling of pesticides.

Nevertheless, CMP argues that section 136v(a)'s express grant of state authority to regulate pesticides without an explicit reference to local governments evinces a congressional intent to exclude municipal governments from the field of pesticide control. This argument is without merit.

■ First, as a general principle, a state is free to delegate any power it possesses to its political subdivisions. *See* 62 C.J.S. § 107 ("subject to constitutional limitations, the legislature may confer on municipal corporations such powers as it sees fit; it is a matter of discretion"). The Maine Constitution, art. VIII, pt. 2, § 1, grants "Home Rule" to municipalities, and the Maine Legislature has defined this Home Rule as a delegation to the municipalities

of authority to exercise any power or function that the Legislature has power to confer upon them, and that "is not denied either expressly or by clear implication." 30–A M.R.S.A. § 3001 (Supp.1988). As discussed below, the Legislature has not expressly or by clear implication denied municipalities the power to regulate pesticide use more stringently than FIFRA. Second, the United States Supreme Court has determined that "for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as the statewide laws." *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Clearly, a statewide law regulating pesticide use in keeping with the parameters established by section 136v(a) of the federal act would be constitutional. Third, a presumption exists that "state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough,* 471 U.S. at 715, 105 S.Ct. at 2376. *See also Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 614 (1977) ("we start with the assumption that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress") (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947)). Therefore, to argue that the absence of mention of local governments in the section of FIFRA that expressly delegates regulatory power to the states demonstrates congressional intent to preclude a state's political subdivisions from enacting its own more stringent regulations disregards traditional notions of state sovereignty.

CMP next contends that the legislative history of FIFRA demonstrates that Congress intended to exclude local pesticide regulation. CMP does not direct our attention to specific portions of the federal statute's legislative history to bolster this argument; rather CMP supports its contention with a single federal district court

decision, *Maryland Pest Control Association v. Montgomery County*, 646 F.Supp. 109 (D.Md.1986), *aff'd without opinion*, 822 F.2d 55 (4th Cir.1987) (hereinafter *"Montgomery County"*). The district court in *Montgomery County* examined the legislative history of FIFRA and determined that "the evidence is clear that Congress ... concluded that only States and not their subdivisions should be authorized to regulate the sale and use of pesticides." *Id.* at 111.

Other courts, however, have examined the same legislative history and reached the opposite conclusion. First, the California Supreme Court in *People ex rel. Deukmejian v. Mendocino County*, 36 Cal.3d 476, 204 Cal.Rptr. 897, 683 P.2d 1150 (1984) read the legislative history as establishing a compromise position that neither authorizes nor prohibits local regulation. *Id.*, 204 Cal.Rptr. at 907, 683 P.2d at 1160. The California court stated that "the legislative history [of § 136v] does not demonstrate a clear congressional intention to preempt traditional local police powers to regulate the use of pesticides or to preempt state power to distribute its regulatory authority between itself and its political subdivisions." *Id.* Accordingly, the California Court reasoned that each state is left to determine whether its own political subdivisions shall exercise regulatory power over pesticides. *Id.* Second, a Colorado federal district court in *Coparr, Ltd. v. City of Boulder*, Civil Action No. 87–m–1965, slip op. (D.Colo. Oct. 3, 1989) (hereinafter *"City of Boulder"*), reviewed the legislative history and the decisions in both *Montgomery County* and *Mendocino County*, and determined that the legislative history is "not conclusive of Congressional intent." *Id.* slip op at 4. Acknowledging the presumption that the supremacy clause does not invalidate local regulation of safety and health matters, the Colorado court concluded that pesticide regulation is a local health concern within the legislative power of municipal home rule under Colorado law. *Id.* slip op at 5.

Upon examining the legislative history ourselves, we find the decisions in *Mendocino County* and *City of Boulder* more persuasive than that in *Montgomery County* because the approach of the first two is, as the court in *City of Boulder* expressed it, "consistent with the historical view of state sovereignty and the state's freedom to distribute regulatory power between itself and its political subdivisions." *City of Boulder*, slip op at 5.

### III.

■ CMP next argues that by enacting the Pesticide Control Act and the Pesticide Board Act the Maine Legislature intended to preempt the field of pesticide regulation. We find this argument unpersuasive as well.

As noted above, the Maine Constitution grants municipalities "Home Rule," Me. Const. art VIII, pt. 2, § 1, and the Legislature has defined this Home Rule as a delegation to the municipalities of authority to exercise any power or function that the Legislature has power to confer upon them, and that "is not denied either expressly or by clear implication." 30–A M.R.S.A. § 3001 (Supp.1988). Moreover, because local authority is "necessary for the welfare of the municipalities and their inhabitants," the Legislature has mandated that section 3001 "shall be liberally construed." *Id.* at § 3001(1), and has created a rebuttable presumption that any ordinances enacted by municipalities are valid. *Id.* at § 3001(2). Finally, section 3001(3) provides that "[t]he Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law." *Id.* at § 3001(3). In light of this broad delegation of authority to municipalities under Home Rule, only where the "legislature intend[s] to create a comprehensive and exclusive regulatory scheme [shall] a municipal ordinance [at odds with the regulatory scheme] ... fail as a violation of the Home Rule statute." *Midcoast Disposal, Inc. v. Town of Union*, 537 A.2d 1149, 1159 (Me.1988) (quoting *Tisei v. Town of Ogunquit*, 491 A.2d 564, 570 (Me.1985)). *Accord Camden and Rockland Water Co. v. Town of Hope*, 543 A.2d 827, 830 (Me.1988). The

Lebanon ordinance is neither explicitly preempted by any Maine statute nor implicitly preempted by a comprehensive and exclusive regulatory scheme.

We address the question of express preemption first. Neither the Pesticide Control Act nor the Pesticide Board Act contains any provision explicitly preempting local regulation of the use of pesticides. To the contrary, where reference is made to municipal authority in either act, each statute expressly states that these sections shall not affect municipal authority to enact ordinances. *See* 22 M.R.S.A. § 1471–U(4); 7 M.R.S.A. § 625. Moreover, the Pesticide Board Act contains a specific provision governing procedures used to maintain, "for informational purposes," a centralized catalog of municipal ordinances that "specifically apply to pesticide storage, distribution or *use.*" 22 M.R.S.A. § 1471–U(1) (emphasis added). This provision establishes *regulations for the listing* of both existing ordinances and future ordinances, and states that the only intent of this section is "to provide information on municipal ordinances, ... not [to] affect municipal authority to enact ordinances." *Id.* at (2)–(4). It would have been senseless for the Legislature to have established a mechanism to create a centralized listing of municipal ordinances that govern the use of pesticides if the Legislature had intended to deprive municipalities of the power to enact such ordinances. "[W]henever possible, courts will construe a legislative scheme so as to render no portion of it useless or unnecessary." *Ullis v. Town of Boothbay Harbor*, 459 A.2d 153, 159 (Me. 1983) (citing *Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979)).

We now turn our attention to the question of implicit preemption. CMP argues that the statutory scheme created by both the Pesticide Board Act and the Pesticide Control Act is so comprehensive in scope that one must conclude that the legislative intent was to occupy the field of pesticide regulation. We disagree. Section 1471–U of the Pesticide Board Act's provision, which requires the centralized listing of municipal ordinances, and which we have just examined, clearly anticipates the existence of municipal ordinances governing pesticide use. CMP's implicit preemption argument is inconsistent with the expectation created by section 1471–U that municipalities will enact ordinances related to pesticide storage, distribution, or use.

CMP also argues that the provisions of the Pesticide Control Act concerning critical areas "encompass[] a broad range of concerns, leaving no room for municipalities to act further." *See* 22 M.R.S.A. §§ 1471–F (1980), 1471–M(4) (Supp.1988) (amended by P.L.1989, ch. 502, § 67). However, since both the critical areas language and the language retaining existing local authority in § 1471–U were enacted as part of the same law, P.L.1987, Chapter 702, there is no basis for the argument that the critical areas language displaced municipal authority.

Moreover, the statutory scheme created by the Pesticide Control Act and the Pesticide Board Act is not so pervasive that we are compelled to conclude that this scheme was intended to occupy the field of pesticide regulation. To the contrary, the Maine acts have left open areas that provide room for potential, appropriate regulation by municipalities. For example, although the Pesticide Control Act prohibits the introduction of a pesticide into waters of the State without first obtaining a proper waste discharge license, 22 M.R.S.A. § 1471–F, neither act requires setback distances between pesticide applications and surface water, groundwater, wetlands, or other ecologically sensitive areas. For further example, the Pesticide Control Act expressly requires specific public notification for forest insect aerial spray applications, 22 M.R.S.A. § 1471–R, and provides that additional notification requirements may be established by the board. Notification requirements for other types of pesticide applications that may create a risk to public health are not expressly provided for by either act. We conclude that local regulation within these and other areas not addressed in the statutory scheme created by the two acts could be appropriate.

Finally, and of greatest importance, the Lebanon ordinance does not frustrate the

purposes of the two Maine pesticide acts. The Pesticide Board Act's purpose is to assure:

> to the public the benefits to be derived from the safe, scientific and proper use of chemical pesticides while safeguarding the public health, safety and welfare, and ... [to protect the] natural resources of the State....

22 M.R.S.A. § 1471-A. The purpose of the Pesticide Control Act also is to protect public health by regulating "the labeling, distribution, storage, transportation, use and disposal of pesticides...." 7 M.R.S.A. § 603. By requiring a more stringent review process for certain types of pesticide use than that found in the two Maine pesticide acts, the Lebanon ordinance shares and advances these same purposes.

### IV.

■ Finally, CMP argues that the Lebanon ordinance constitutes an improper delegation of powers. We disagree. As the Superior Court noted, there is no delegation of any power here at all. Through the ordinance in question, the town legislative body reserved to itself authority to decide exceptions to its prohibition on non-agricultural commercial spraying.

■ Under the guise of its "improper delegation" argument, CMP also attempts to raise before us a due-process claim. CMP contends that the Lebanon ordinance is constitutionally unviable because it fails to spell out its standards in sufficient detail to furnish a guide that will enable a non-agricultural pesticide user reasonably to determine what it needs to do to obtain permission to spray. We do not consider this issue because it is not properly before us. This due-process issue was one of the issues dismissed without prejudice by stipulation of the parties, not one of the issues on which the court granted summary judgment and on which the 54(b) judgment was

subsequently entered. Because the court did not dispose of this issue in such a way as to leave no further questions for future consideration, there has been no final judgment on this issue from which an appeal can be taken pursuant to M.R.Civ.P. 73(a).[4]

The entry is:

Judgment affirmed.

All concurring.

---

4. *Cf. Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.,* 351 A.2d 845, 848 (Me.1976) (although neither 4 M.R.S.A. § 57 nor M.R.Civ.P. 73 "talk in terms of appealability from final judgments," the Law Court has adopted as a matter of sound judicial policy the general rule that "cases are not ripe for appel-

late review unless appeal is from a 'final' judgment, except when otherwise specifically authorized"); *Martel v. Town of Old Orchard,* 404 A.2d 994, 995 (Me.1979) (judgment becomes final when it disposes of the action and leaves no further questions for the future consideration of the court).