**HARTFORD ENTERPRISES, INC., Plaintiff**

v.

**Richard COTY, Workers' Compensation Specialist, Maine Workers' Compensation Board, Defendant.**

**Civil No. 07–112–P–H.**

United States District Court, D. Maine.

Jan. 3, 2008.

Jon Haddow, Farrell, Rosenblatt & Russell, Bangor, ME, for Plaintiff.

John Rohde, Maine Workers' Compensation Board, Augusta, ME, for Defendant.

## DECISION AND JUDGMENT ON STIPULATED RECORD

D. BROCK HORNBY, District Judge.

### INTRODUCTION

The plaintiff, a Canadian company, challenges the Maine Workers' Compensation Act on federal constitutional and preemption grounds because it applies to Canadian employees who come into Maine for only restricted purposes and limited times. One of the constitutional issues it raises may deserve thoughtful consideration. But the plaintiff filed its complaint in this federal court after the Maine Workers' Compensation Board started enforcement proceedings against it. Because those state proceedings offer the Plaintiff ample opportunity to present its federal claims there, I DECLINE to enjoin the state proceedings and instead ABSTAIN as required by *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. The case is presented here on a stipulated record and oral argument.[1]

### FACTUAL AND LEGAL BACKGROUND

The Maine Workers' Compensation Act of 1992, 39–A M.R.S.A. § 101 *et seq.,* mandates that "[e]very private employer is subject to this Act." 39–A M.R.S.A. § 401(1). Those employers must either obtain a workers' compensation policy from an approved insurance company or obtain approval of a program of self-insurance. *See id.* § 403. This Maine law extends explicitly to a "nonresident employer whose employees work in the State." *Id.* § 401(6).

Hartford Enterprises, Inc. is a Canadian company in New Brunswick that sells modular homes, including some to customers in Maine. Stipulated R. ¶¶ 1–2 (Docket Item 18). Its employees travel to Maine for brief periods (a few days) to inspect, oversee, and deliver parts for the installation of its modular homes. *Id.* ¶¶ 4–6. Hartford Enterprises' employees do not actually install the modular homes in Maine. *Id.* ¶ 5. The parties agree that Hartford Enterprises' employees enter the United States pursuant to valid B–1 business visitor visas (or as temporary business visitors under NAFTA) and that their employment activities are permissible under relevant U.S. immigration laws. *Id.* ¶ 9. Hartford Enterprises, however, does not have workers' compensation insurance in Maine from an approved insurer or an approved program of self-insurance. Stipulated R. ¶ 10.

After preliminary communications between the parties, the Maine Workers' Compensation Board ("Board") on July 24, 2007 sent Hartford Enterprises a formal complaint and notice threatening a civil

---

1. The parties agreed at oral argument that the Maine Workers' Compensation Board should be dismissed as a party (the federal lawsuit remains pending against the state official, the workers' compensation specialist, who initiated the state proceeding), that the defendant's motion to dismiss is moot, that the plaintiff Hartford Enterprises' requests for a temporary restraining order and a preliminary injunction are moot, and that the parties are respectively seeking final judgment on a stipulated record, not summary judgment.

penalty (up to $10,000 or 108% of owed premiums) because of its failure to obtain workers' compensation coverage for its employees who work temporarily in Maine. Compl. Ex. C. Hartford Enterprises then filed this federal lawsuit seeking to enjoin the Board proceedings. The Board voluntarily postponed a hearing on its complaint and penalty notice, so as to await a decision from this Court.

## ANALYSIS

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts must not interfere with ongoing state criminal proceedings by issuing an injunction or a declaratory judgment. It later extended that principle to certain types of state civil and administrative proceedings. See *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–35, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 637–38 (1st Cir.1996). This doctrine, referred to as *Younger* abstention, reflects the interests of "comity, federalism, economy, and the presumption that state courts are competent to decide issues of federal constitutional law...." *Communications Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1015 (9th Cir.1999) (citing *Middlesex County Ethics Comm.*, 457 U.S. at 431–32, 102 S.Ct. 2515). *Younger* abstention is mandatory, not discretionary, see *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir.2005), when the federal lawsuit would interfere:

(1) with an ongoing state judicial proceeding;

(2) that implicates an important state interest; and

(3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge.

*Rossi v. Gemma*, 489 F.3d 26, 35 (1st Cir.2007).

The first and third elements are met easily in this case. As to the first, Hartford Enterprises concedes that the Board proceedings qualify as ongoing judicial proceedings. Tr. at 16. As to the third, Hartford Enterprises argues that the Board does not have the authority to address its federal claims because the Board cannot sustain a challenge to its own authority. Whether or not that is so, "it is sufficient ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Comm'n*, 477 U.S. at 629, 106 S.Ct. 2718. A party to Board proceedings has a right to appeal to the Maine Superior Court. 39–A M.R.S.A. § 360(3); 90–351 Code of Maine Rules, ch. 15, § 10.4–8 (the order of the Presiding Officer "will constitute final agency action which is appealable in Superior Court."). The Maine Superior Court and, thereafter, the Maine Supreme Judicial Court sitting as the Law Court, certainly may hear and rule upon Hartford Enterprises' federal claims against the Maine Workers' Compensation Act. *See, e.g., Robards v. Cotton Mill Assocs.*, 677 A.2d 540, 544 (Me.1996) (finding that a federal regulation preempted part of the Maine Human Rights Act); *E.I. Du Pont de Nemours & Co. v. State Tax Assessor*, 675 A.2d 82 (Me.1996) (addressing a Foreign Commerce Clause challenge to a Maine taxing method); *Central Maine Power Co. v. Town of Lebanon*, 571 A.2d 1189, 1191–93 (Me.1990) (examining federal preemption claims against a local ordinance). I conclude, therefore, that both the first and third elements for *Younger* abstention are satisfied.

■ As to the second element—whether an important state interest is implicated—the Supreme Court has said that the state interest must be defined broadly:

> we do not look narrowly to its interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (emphasis in original) ("*NOPSI*"). Here, so far as a workers' compensation law is concerned, Maine's interest lies in protecting employees working in Maine.[2] "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. . . . [L]aws affecting occupational health and safety, and workmen's compensation laws are only a few examples." *De Canas v. Bica*, 424 U.S. 351, 356, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976); *Madeira v. Affordable Housing Found., Inc.*, 469 F.3d 219, 228 (2d Cir.2006); *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 75

(1st Cir.1999). In *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, the Supreme Court ruled that "[f]ew matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power" than the physical and economic protection of workers injured within its territory. 306 U.S. 493, 503, 59 S.Ct. 629, 83 L.Ed. 940 (1939).[3] I conclude that workers' compensation laws are an important state interest.

■ Even in the presence of an important state interest, however, a "facially conclusive" or "readily apparent" (as opposed to merely "substantial") constitutional challenge may avoid *Younger* abstention. *NOPSI*, 491 U.S. at 364–67; *Local Union No. 12004 v. Massachusetts*, 377 F.3d 64, 78 (1st Cir.2004); *Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, 1370 (1st Cir.1995). I therefore must address the merits of Hartford Enterprises' federal claims within this *Younger* framework so as to determine whether or not they are "facially conclusive" or "readily apparent."[4] *See Local Union No. 12004,*

2. This statement of Maine's interest may be generous. *See infra* n.12 and accompanying text concerning the apparent reason for Maine's extension of its statute to nonresident, especially Canadian, employers.

3. The case involved application of the Full Faith and Credit Clause where both Massachusetts and California by statute covered the employment-related injury. The Supreme Court held that California could apply its law to the Massachusetts employee of a Massachusetts corporation when the employee was injured in California while there briefly on business. *See 306 U.S. at 504, 59 S.Ct. 629.*

4. The Fourth Circuit seems to have created a special rule for challenges to state laws under the Commerce Clause, finding that such a challenge always defeats any state interest in a proceeding for *Younger* abstention pur-

poses. *See Harper v. Pub. Serv. Comm'n of West Virginia*, 396 F.3d 348, 355–56 (4th Cir. 2005) (explaining that "[t]he commerce power plays a role in abstention analysis quite different from many of the other provisions of the Constitution. . . . By its very nature, it implicates interstate interests."). The First Circuit has not yet adopted that special rule for Commerce Clause challenges and it seems difficult to square with the Supreme Court's skepticism in *NOPSI* toward any exceptions:

> There is no greater federal interest in enforcing the supremacy of federal statutes than in enforcing the supremacy of explicit constitutional guarantees, and constitutional challenges to state action, no less than preemption-based challenges, call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action. *Yet it is clear that the mere assertion of a substantial constitutional*

377 F.3d at 76 n. 11. The federal claims here are that the Maine Workers' Compensation Act is preempted by federal law (federal immigration law specifically); or that it is otherwise unconstitutional because of the federal government's foreign affairs powers or the Foreign Commerce Clause.[5]

### Preemption

Congress can preempt state legislation either expressly or by implication. *See Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); *Natsios,* 181 F.3d at

73; *see generally* Erwin Chemerinsky, *Constitutional Law: Principles and Policies* 378 (2002).

### (1) Express Preemption

Express preemption occurs when Congress includes preemptive language in a statute. Hartford Enterprises agrees that there is no express preemption applicable here. Tr. 12–13.[6]

### (2) Implied Preemption

Implied preemption has two different forms: field preemption and conflict (also obstacle) preemption.[7]

---

challenge to state action will not alone compel the exercise of federal jurisdiction.
491 U.S. at 365, 109 S.Ct. 2506 (emphasis added). Perhaps *Harper* should be read as the Seventh Circuit reads it, as dealing only with a state law that "by its very nature served to impede interstate commerce." *Stroman Realty, Inc. v. Martinez,* 505 F.3d 658, 663–64 (7th Cir.2007); *see also Marathon Petroleum Co. v. Stumbo,* 2007 WL 4163863, at * 6–10 (E.D.Ky. Nov.20, 2007).

5. The legal theory underlying Hartford Enterprises' claim for federal relief evolved during the proceedings. In its complaint, Hartford Enterprises argued that the Maine "workers' compensation laws are preempted by *federal immigration laws.*" Compl. ¶ 20 (emphasis added). In later written submissions and during oral argument Hartford Enterprises focused its arguments more on the principle that "state action [may not have] more than an incidental effect on either foreign policy or foreign commerce." Tr. at 13; Pl.'s Reply Mem. in Support of Mot. for TRO at 2–3 (Docket Item 20); Pl.'s Obj. to Def.'s Mot. for Summ. J. at 2–6 (Docket Item 22). When the federal government's foreign affairs powers are implicated, a challenge to a state law may be based on any of these three separate, but related, principles. See Howard N. Fenton, III, *The Fallacy of Federalism in Foreign Affairs: State and Local Foreign Policy Trade Restrictions,* 13 Nw. J. Int'l L. & Bus. 563, 571 (1993). In the defendant's written submissions, it addressed only preemption by federal immigration law, and did not deal with the foreign policy and Foreign Com-

merce Clause arguments. At oral argument, the defendant's lawyer seemed to think that the Foreign Commerce Clause issue was then newly raised. See Tr. at 23. However, that argument had been raised in Hartford Enterprises' objection to the motion for summary judgment, and the defendant could have filed a reply to that objection. See Local Rule 7(c).

6. The express preemption clause in the Immigration Reform and Control Act ("IRCA") states: "[t]he provisions of this section preempt any State or local law imposing civil or criminal sanctions ... upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2). This clause has no application to state workers' compensation laws applied to legal business visitors. The NAFTA Implementation Act states: "[n]o State law, or the application thereof, may be declared invalid as to any person or circumstance on the ground that the provision or application is inconsistent with [NAFTA], except in an action brought by the United States for the purpose of declaring such law or application invalid." 19 U.S.C. § 3312(b)(2). Thus, Hartford Enterprises cannot successfully argue express preemption by NAFTA.

7. The standard for implied preemption analysis in this case implicates competing principles. On the one hand, "[p]reemption will be more easily found where states legislate in areas traditionally reserved to the federal government, and in particular where state laws touch on foreign affairs." *Natsios,* 181 F.3d

■ *Field Preemption.* "Field preemption" exists when "Congress's intent to supersede state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); see also *Rice,* 331 U.S. at 230, 67 S.Ct. 1146. Hartford Enterprises' field preemption argument here flows primarily from federal immigration laws. But the Supreme Court has also stated:

> the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus *per se* pre-empted by this constitutional power, whether latent or exercised [A] regulation of immigration ... is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain.

*De Canas,* 424 U.S. at 355, 96 S.Ct. 933. The Maine Workers' Compensation Act in no way determines admission into the United States or the conditions for remaining in this country; therefore, it is not a "regulation of immigration." I conclude that Hartford Enterprises cannot demonstrate a "facially conclusive" claim that federal immigration law preempts the Maine workers' compensation statute. Instead, the Maine workers' compensation statute (and state labor law in general) occupies a distinct field from immigration law, one traditionally within the states'

police powers. *See Madeira,* 469 F.3d at 240 (state "labor laws ... occupy an entirely different field" from immigration law).

■ As for foreign affairs preemption, the Supreme Court suggested the following analysis:

> If a State were simply to take a position on a matter of foreign policy with no serious claim to be addressing a traditional 'state responsibility, field preemption might be the appropriate doctrine, whether the National Government had acted and, if it had, without reference to the degree of any conflict.... Where, however, a State has acted within what Justice Harlan called its 'traditional competence' ... but in a way that affects foreign relations, it might make good sense to require a conflict, of a clarity or substantiality that would vary with the strength or the traditional importance of the state concern asserted.

*American Ins. Ass'n v. Garamendi,* 539 U.S. 396, 419 n. 11, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003). Although dictum, this principle from *Garamendi* provides a useful guide here: because employment regulation is within the "traditional competence" of the states, vague notions of a possible impact on federal foreign policy do not support field preemption. Instead, a clear or substantial conflict must be demonstrated, something that does not appear in this case (as explained in the next section).

■ *Conflict (and Obstacle) Preemption.* "Conflict preemption" applies

---

at 73. On the other hand, when the state law at issue is within the states' historical police powers, any federal preemption must meet a higher standard of being "clear and manifest." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)); *see also De Canas,* 424 U.S. at 357–58, 96 S.Ct. 933 (a court should

"not presume Congress ... intended to oust state authority to regulate the employment relationship ... in a manner consistent with pertinent federal laws," particularly in the absence of "any specific indication in either the [statutory] wording or the legislative history ... that Congress intended to preclude even harmonious state regulation.").

when "compliance with both federal and state regulation is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). There is no such conflict here. Hartford Enterprises can comply with both federal immigration laws and the Maine Workers' Compensation Act.

Hartford Enterprises also relies on the statement in *Garamendi* that state legislation that produces "more . . . than an incidental effect in conflict with express foreign policy of the National Government . . . require[s] preemption of the state law." 539 U.S. at 420, 123 S.Ct. 2374. But here there is no demonstration that the Maine Workers' Compensation Act affects federal foreign policy, or that there is any express federal foreign policy with which it could conflict.

A variation of "conflict preemption" is "obstacle preemption," which occurs when a state law obstructs "accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). According to the Supreme Court, "[w]hat is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby,* 530 U.S. at 373, 120 S.Ct. 2288. But Hartford Enterprises has not shown that the Maine law impedes the goals of any federal policy and has provided no support from the federal statutes, Executive Agreements, or even Executive Branch policy statements to suggest that applying the Maine workers' compensation laws to Canadian employees who come into

Maine on temporary business impairs the goal of the temporary "business visitor" B–1 visa or NAFTA's "business visitor" provisions. "[O]bstacle preemption" here, if it exists at all, is far from "facially conclusive." *Cf. Madeira,* 469 F.3d at 244–45 (explaining that "workers' compensation awards are not an obstacle to the accomplishment and execution of the policy and purposes of the [Immigration Reform and Control Act]").

In sum, Hartford Enterprises' federal preemption arguments are not facially conclusive and preemption is not readily apparent. *Younger* abstention, therefore, is not avoided.

### Federal Foreign Affairs Powers

"The Constitution's foreign affairs provisions have long been understood to stand for the principle that power over foreign affairs is vested exclusively in the federal government." *Natsios,* 181 F.3d at 49. Thus, "there is a threshold level of involvement in and impact on foreign affairs which the states may not exceed"—regardless of the underlying state interest. *Id.,* 181 F.3d at 52. In *Natsios,*[8] the First Circuit found that a Massachusetts law restricting state agencies from dealing with companies in or doing business with Burma/ Myanmar did have more than an incidental effect on federal foreign affairs because of the design and intent of the law, the amount of purchasing power the law affected (over $2 billion), the possibility of other states following Massachusetts's example, the protests lodged by other foreign countries, and the differences between the Massachusetts and federal approaches. *See id.,* 181 F.3d at 53. To reach this conclusion, the First Circuit

---

**8.** The Supreme Court affirmed the First Circuit's decision in *Natsios*—which by the time it reached the Supreme Court was captioned *Crosby* because of a change in the Massachusetts state official, *see Crosby,* 530 U.S. 363, 371 n. 4, 120 S.Ct. 2288—based solely on preemption, concluding that it did not need to reach the dormant foreign affairs powers or Foreign Commerce Clause issues. *See id.,* 530 U.S. at 374 n. 8.

relied on *Zschernig v. Miller*, a Supreme Court decision that voided an Oregon testamentary statute because it required state courts to "launch [ ] inquiries into the type of governments that obtain in particular foreign nations," 389 U.S. 429, 434, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968). *See Natsios*, 181 F.3d at 52–53.

■ Here, it is far from facially conclusive that the Maine Workers' Compensation Act has a direct effect on foreign affairs. The Maine statute is not like the state laws in *Zschernig* or *Natsios*. It requires no state determination about the form of government in foreign countries, and Hartford Enterprises has presented no evidence regarding the effect of the Maine Workers' Compensation Act on federal foreign policy, beyond speculation about what could happen if every state enacted such a law and foreign countries retaliated.

Because Hartford Enterprises' federal foreign affairs power arguments are not facially conclusive and it is not readily apparent that the foreign affairs power prevents application of the Maine workers' compensation statute to Hartford Enterprises' employees, *Younger* abstention is not avoided.

### Foreign Commerce Clause

■ Finally, Hartford Enterprises argues that the Foreign Commerce Clause prevents Maine's application of its workers' compensation statute to Hartford Enterprises' employees temporarily in Maine and that the argument is so facially conclusive or readily apparent as to avoid *Younger* abstention. *See* Pl.'s Obj. to Def.'s Mot. to Dismiss at 1–2 (Docket Item 21); Pl.'s Obj. to Def.'s Mot. for Summ. J. at 2–6 (Docket Item 22). The Foreign Commerce Clause may be Hartford Enterprises' strongest argument, and unfortunately the defendant has not addressed it. But I do not finally adjudge its success. I conclude only that as presented here, it is neither facially conclusive nor so readily apparent as to avoid *Younger* abstention.

Hartford Enterprises argues that Maine is trying to regulate a foreign company's relations with its employees whom federal immigration authorities have cleared to enter Maine. *See id.* at 3. Maine is doing so, says Hartford Enterprises, for protectionist reasons, to shift the balance in favor of domestic employers, fearing that foreign entities otherwise have a competitive advantage over domestic companies. *See id.* It argues that these actions amount to an impermissible state attempt to regulate foreign commerce, impose a burden on such commerce, and impair the Nation's ability to "speak with one voice" in dealing with other governments. *See id.* at 3–4 (citing *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448–9, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979)). As an example of the Maine law's reach, Hartford Enterprises says that the Maine statute could extend to the flight crew of every foreign airline that lands in the state to refuel and could provoke retaliation from other countries. *See id.* at 5.

■ Article I, § 8 of the Constitution gives Congress the power to regulate foreign commerce. As with interstate commerce, the Supreme Court interprets this affirmative grant of power to have a "dormant" aspect that restrains state regulations even in the absence of Congressional action. *See Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1, 7, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986). Under the dormant Commerce Clause, "a statute that facially discriminates against interstate or foreign commerce, will, in most cases, be found unconstitutional." *Natsios*, 181 F.3d at 67 (citing *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128

L.Ed.2d 13 (1994)); *see also Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.*, 505 U.S. 71, 81, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 750 (5th Cir.2006). The same analytical framework applies to the dormant Foreign Commerce Clause as is used for the dormant Interstate Commerce Clause, *see Antilles Cement Corp. v. Acevedo Vila*, 408 F.3d 41, 46 (1st Cir.2005), except that state restrictions that burden foreign commerce "are subjected to a more rigorous and searching scrutiny," *South–Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 100, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984); *see also Japan Line*, 441 U.S. at 446, 448, 99 S.Ct. 1813 ("a more-extensive constitutional inquiry is required" in Foreign Commerce Clause cases); *Natsios*, 181 F.3d at 66–77, and consideration is given to any impediment of the federal government's ability to speak with one voice in regard to regulation of foreign commerce. *See id.*, 181 F.3d at 57 (quoting *Japan Line*, 441 U.S. at 449, 99 S.Ct. 1813).[9]

The parties seem to agree that by its terms Maine's statute applies to a Canadian company like Hartford Enterprises that sends employees into Maine for very short periods of time. At oral argument, the Defendant argued that "the statute is facially neutral. It applies to an employer from anywhere, from Canada, or from Massachusetts, New Hampshire or Vermont and *it's not designed at all to deal with specifically Canada.*" Tr. at 23–24 (emphasis added). What the Defendant did not mention at oral argument or in its written memoranda (nor did Hartford Enterprises) is the fact that Maine allows reciprocity to other states, 39–A M.R.S.A. § 113, but seems to exclude Canadian provinces from this reciprocity.[10] Neither

---

9. In *Natsios*, the First Circuit struck down a Massachusetts statute concerning Burma/Myanmar on three separate grounds, one of which was that it violated the Foreign Commerce Clause by facially discriminating against foreign commerce, impeding the federal government's ability to speak with one voice in foreign affairs, and attempting to regulate conduct outside the borders of Massachusetts and even the United States. *See Natsios*, 181 F.3d at 67.

10. 39–A M.R.S.A. § 113 provides an exemption for a qualifying "employee who is employed in another state." The word "state" is not defined in the Maine Workers' Compensation Act; and the definition of "state" in the Maine Revised Statutes is that when "used with reference to any organized portion of the United States, [it] may mean a territory or the District of Columbia." 1 M.R.S.A. § 72(21). The Maine Legislature was made aware that its choice to use the word "state" in section 113 could exclude Canadian companies from this exemption. See Mem. from Dan Bernier, Representing the Professional Insurance Agents of Maine, on L.D. No. 6 to the Distinguished Members of the Labor Committee (Mar. 29, 1995); Testimony of James H. McGowan, Executive Director of the Workers' Compensation Board, on L.D. No. 6 before the Joint Standing Committee on Labor (Mar. 15, 1995); Bill Analysis by Lisa C. Copenhaver, Legal Analyst, on L.D. No. 6 to the Joint Standing Committee on Labor (Mar. 24, 1995)—these three sources are part of the legislative history associated with *An Act to Amend the Workers' Compensation Laws to Provide an Exemption from Coverage Requirements for Nonresident Employees*, L.D. No. 6 (117th Maine Legislature) (available at the Maine State Law and Legislative Reference Library in Augusta, Maine), which was enacted and became 39–A M.R.S.A. § 113, the reciprocity provision. However, there has been no authoritative interpretation of the scope of section 113, as it might apply to foreign, nonresident employees, by a Maine court. Interpretation of section 113's scope is not an issue in this case: Hartford Enterprises has not argued that the language of section 113 excludes a Canadian employer from coverage under the circumstances here. And since neither party has argued that the state law is unclear, there is no need to engage in *Pullman* abstention analysis (avoiding a constitutional issue on account of unclear state law). *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

party has discussed what such a provision does to "facial neutrality." [11]

Moreover, the legislative history (also not cited by either party) suggests that the explicit extension of the Maine Workers' Compensation Act to nonresident employers (such as Canadian employers) in section 401(6) may indeed have been for protectionist purposes. *See* Letter from Brian K. Atchinson, Superintendent, State of Maine Dept. of Prof. and Fin. Reg., Bureau of Insurance, on L.D. No. 1351 to the Joint Standing Committee on Labor (April 11, 1997) ("any employee injured in Maine is eligible to claim Maine benefits" and unless nonresident employers obtain insurance from an authorized insurer, the "result [is] a competitive advantage for that employer"); Bill Analysis by Lisa Copenhaver, Legislative Analyst, Office of Policy and Legal Analysis, on L.D. No. 1351 to the Joint Standing Committee on Labor (April 13, 1997) (explaining that the proponents for applying the Maine Workers' Compensation Act to nonresident employers argued that "Canadian companies send their woodcutters into Maine and undercut

Maine woodcutters because they don't have worker comp costs").[12] If that conclusion is correct (and I do not decide it), it may support an argument that the statute discriminates against foreign commerce. *See Natsios,* 181 F.3d at 67 ("state laws that are designed to limit trade with a specific foreign nation are precisely one type of law that the Foreign Commerce Clause is designed to prevent").

But Hartford Enterprises did not raise any argument in this federal case based upon the statutory exemption in 39–A M.R.S.A. § 113 benefitting domestic companies located in other states. The parties have neither discussed this provision of the statute, nor referred to the legislative history. This is not the occasion to explore and decide these unargued issues. The Foreign Commerce Clause is a "complex and largely undeveloped area of constitutional law" in which the Supreme Court's "only iterations ... have come in situations involving state taxation of foreign commerce." *Antilles Cement Corp.,* 408 F.3d at 46–47; *see also* Leanne Wilson,

---

11. Perhaps there is a reason for distinctive treatment: Canadian provinces may not require workers compensation insurance because of different liability and insurance standards in Canada. *See, e.g.,* Bill Analysis by Lisa Copenhaver, Legislative Analyst, Office of Policy and Legal Analysis, on L.D. No. 1351 to the Joint Standing Committee on Labor (April 13, 1997), *see infra* note 12; Tr. at 11 (referring to Canadian universal health insurance). The record here is not adequate to assess such differences nor is it clear that such differences could justify discrimination against foreign commerce. *Cf. Kraft,* 505 U.S. at 81, 112 S.Ct. 2365 ("We find no authority ... for the principle that discrimination against foreign commerce can be justified if the benefit to domestic subsidiaries might happen to be offset by other taxes imposed not by [this state], but by other States and by the Federal Government."). This is one of the undeveloped arguments that prevent me from finding that Hartford Enterpris-

es has presented a facially conclusive or readily apparent case for voiding the Maine statute.

12. These letters are part of the legislative record accompanying *An Act to Amend the Maine Workers' Compensation Act of 1992 Regarding Nonresident Employers,* L.D. No. 1351 (118th Maine Legislature) (available at the Maine State Law and Legislative Reference Library in Augusta, Maine), which became 39–A M.R.S.A. § 401(6), subjecting nonresident employers to coverage. After enactment of the Workers' Compensation Act of 1992, the 117th Legislature added section 113 to create an exemption for qualifying nonresident employees from other states; the 118th Legislature added section 401(6) to "clarif[y] that nonresident employers whose employees are in the State on a regular basis are required to obtain coverage for their employees. . . ." Bill Summary accompanying L.D. No. 1351 (118th Maine Legislature).

Note, *The Fate of the Dormant Foreign Commerce Clause After Garamendi and Crosby*, 107 Colum. L.Rev. 746 (2007). On this record, Hartford Enterprises has not made a facially conclusive argument (and it is not readily apparent) that the statute is discriminatory or that Maine's application of its workers' compensation laws to temporary business visitors from Canada will have a detrimental effect on federal foreign policy or foreign commerce. And the defendant only briefly addressed the Foreign Commerce Clause argument at oral argument and not at all in its written memoranda. Whether Hartford Enterprises will be able to make its Foreign Commerce Clause case during the Maine Workers' Compensation Board proceedings or thereafter upon state court judicial review, I do not venture to say. I conclude only that Hartford Enterprises has not shown a valid basis for an exception to *Younger* abstention.

### CONCLUSION

I do not decide whether Maine's extension of its workers compensation law to Canadian employers like Hartford Enterprises constitutes good public policy, from either a state or a federal perspective. *Younger* abstention, when it applies, is mandatory. Because Hartford Enterprises has not presented a "facially conclusive" or "readily apparent" case that the Maine Workers' Compensation Act is either unconstitutional or preempted, I conclude that all three requirements of *Younger* abstention are met and that I must abstain from ruling on the merits of this case. It will be up to the Maine courts to rule in the first instance whether the Maine law is valid.

So ORDERED.